WATSON ETC. ET AL. *v.* DEPARTMENT OF PUBLIC WELFARE ET AL.

[No. 19,131. Filed March 16, 1960. Dissenting opinion filed March 29, 1960. Rehearing denied April 29, 1960. Transfer denied June 14, 1960.]

*Chester V. Lorch, Basil H. Lorch, Jr.,* and *Lorch & Lorch,* of New Albany, for appellants.

*Edwin K. Steers,* Attorney General, *Frank E. Spencer,* Assistant Attorney General, and *Eugene Feller,* of Corydon, for appellee.

Ax, J.—This action was brought under the authority of Burns' Ind. Stat., §§9-3201 through 9-3210, [Acts 1945, ch. 356], governing the actions of juvenile courts, and as an aid in the determination of this case, we

have noted particularly the purpose and basic principle of said act as set out in Burns', §9-3201:

"Purpose and basic principle.—The purpose of this act [§§9-3201—9-3225] is to secure for each child within its provisions such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interests of the state; and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents.

The principle is hereby recognized that children under the jurisdiction of the court are subject to the discipline and entitled to the protection of the state, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and from them. [Acts of 1945, ch. 356, §1, p. 1724.]"

Anna M. Davis, Director of Public Welfare for Harrison County, filed a petition in the Harrison Circuit Court, performing the function of Probation Officer pursuant to the provisions of the Acts of 1936 (spec. sess.), ch. 3, §21, as found in Burns' Ind. Stat., §52-1120, and pursuant to the authorization of the Harrison Circuit Court. Said petition alleged that Vicki Gaile Watson, a four-year-old minor child, did not have proper parental care or guardianship, and prayed that the child be adjudged neglected. Trial was had and judgment was entered declaring said child a neglected child, and making said child a ward of the Department of Public Welfare of Harrison County.

The appellant, Clifford Watson, brings this appeal as father and next friend of Vicki Gaile Watson, and in his individual capacity; appellee, State of Indiana, contends that since Clifford Watson did not move for a new trial in the capacity of next friend, but that he filed said motion as father and

natural guardian, he cannot perfect an appeal in such capacity. Appellee further states that it is unable to perceive of any authority by which Clifford Watson appears in this proceeding. Burns' Ind. Stat., §9-3208, specifically provides that the parents shall be named in the petition to be filed by the county probation officer. Burns' Ind. Stat., §9-3209 specifically provides that the parents shall be summoned. Without deciding whether the appellant is properly before this court as a next friend to his daughter, it appears sufficient to say that questions raised by this appeal may be brought by him as a parent. It is apparent that Clifford Watson is the father of Vicki Gaile Watson, and that whether he is in the action as "friend" or as father or as natural guardian is immaterial, since the ending after his name is merely *descriptive personae*. *Weiland, Executrix* v. *Scheuch* (1953), 123 Ind. App. 633, 105 N. E. 2d 829 and 109 N. E. 2d 610.

Although not presented in the briefs, a question concerning the right of the State of Indiana to be a party to this appeal was raised at the oral argument of this cause, and was discussed at great length. Because of this, we deemed it advisable to answer this question.

The county departments of public welfare were created in 1936, under the Public Welfare Act, Burns' Ind. Stat., §52-1101 *et seq.* Under these statutes the state board of public welfare, state department of public welfare, and county boards and departments of public welfare were created. The state department is charged with the administration and supervision of welfare activities of the state under §52-1104, Burns' Ind. Stat. Included in this section under subsection (c) are all public child welfare services. The county boards are appointed by the circuit or juvenile court judges. The county director is selected by the county board from

lists of eligible persons established by the Indiana personnel board, §52-1119, Burns' Ind. Stat. This latter section also provides for removal of the county director by the state board and for appointment of the county director by the state board if the county board fails to follow the statute. Burns' Ind. Stat., §52-1120, as will be pointed out, provides for the performance of the functions of the probation officer by the county director. As can be seen by the statutes concerning public welfare, the state and county departments are rather closely interwoven and the state has a definite interest in the disposition of all cases handled by the county departments.

Burns' Ind. Stat., §49-1902, provides for the general duties of the attorney general. These duties include the attendance to interests of the state in all suits, actions or claims which the state is or may become interested in the Supreme Court of the state.

It must be further observed that the appellant specifically named the State of Indiana as an appellee in his assignment of errors. The state made no objection then or later. It submitted a brief and appeared at the oral argument.

The state, however, appears to have a further prerogative to appear in an action involving a minor child. The case of *State ex rel. Johnson* v. *White Circuit Ct.* (1947), 225 Ind. 602, 608, 77 N. E. 2d 298, points out that the state has inherent power in such cases. In that case the court stated:

> "The history of juvenile jurisdiction reveals that the state assumed this authority as ■ *parens patriae* for the welfare of all infants. 11 C. J. 285.
>
> " 'Under the ancient common law, the king, as *parens patria,* was deemed to have charge of all persons who, by reason of their youth and inexperi-

ence, were unable to care for themselves, or protect their estates. In the exercise of this supervision, the chancellor, who was originally an ecclesiastic, and the keeper of the king's conscience, was the guardian of all infants. 9 Enc. Pl. & Prac. 890; Black, Law Dict. tit. Chancellor; 1 Chit. Bl. *462, note 8; 2 Story, Eq. Jur. §1332. *Butterick* v. *Richardson* (1901), 39 Ore. 246, 64 P. 390, 391.'

"The state of Indiana, acting by its General Assembly, has continued and extended this jurisdiction under the various juvenile acts.

"The power conferred upon the juvenile court under this is of the same character as the jurisdiction exercised by courts of chancery over the person and property of infants, and flows from the general power and duty of the state *parens patriae* to protect those who have no other lawful protector. *Dinson* v. *Drosta* (1907), 39 Ind. App. 432, 434, 80 N. E. 32, 33."

For these various reasons, we are of the opinion that the State of Indiana, represented by the Attorney General, was a proper party appellee to this proceeding.

The assignment of errors filed in this action stated:

(1) That the Court erred in overruling the appellants' Motion for a New Trial.

(2) That the trial court did not have jurisdiction over the subject matter of the action.

The motion for a new trial contained the following specified grounds: (1) Irregularities in the proceedings of the court by which said father and natural guardian was prevented from having a fair trial, to-wit:

(a) the Court erred in commencing the hearing on said petition the day following the filing of the petition,

(b) appellant was not given proper notice or time to prepare his defense,

(c)   the petition was filed on May 31, 1957, summons issued the same day and hearing began on June 1, 1957, at 9:30 A. M.;

(2) the decision of the court is not sustained by sufficient evidence; (3) The decision of the court is contrary to law.

The first question under this motion for new trial which we will determine is whether the alleged irregularities in the court below prevented appellant from having a fair trial. The record shows that Anna M. Davis, Director of Public Welfare of Harrison County, performing probation functions for the Harrison Circuit Court, there being no regular probation officer for the Harrison Circuit Court due to lack of appropriation therefor, filed a petition, as required by Burns' Ind. Stat., §9-3208, in the Harrison Circuit Court, on May 31, 1957. On the same day a summons was issued, commanding Mr. and Mrs. William Housel, Mr. and Mrs. A. S. Deakins, Mr. and Mrs. Wayne Housel, Mrs. Marvin Cole, Cecil Snyder, Clifford D. Watson, and Mrs. Kelso Housel to appear and answer the complaint stated in the petition to declare the child delinquent. The return states that the summons was read to the above mentioned parties on May 31, 1957. The parties were ordered to appear on the following day which was June 1, 1957. The cause, "In the Matter of Vicki Gaile Watson, a Child Under the Age of Eighteen (18) Years," was tried on the 1st day of June, 1957. The record states that the Court, after investigation, authorized the Director of Public Welfare to perform the function of probation officer because the county had no appropriation for such officer. The record then states, "Comes now the petitioner in person and together with Vicki Gaile Watson in person and *comes also the father, Clifford Watson and together with his*

*attorney C. Bliss Eskew who enter his appearance for the father, Clifford Watson."* (Our emphasis.) The trial was recessed and later concluded on June 4, 1957. The court took the matter under advisement and judgment was entered on June 28, 1957.

Because of the procedural questions involved, we believe it to be pertinent to the opinion to set forth verbatim the orders of the court entered in this cause after issuance of summons which were as follows:

"AND AFTERWARDS, to-wit on the 1st day of June, 1957, being the 24th Judicial day of the May Term of said Court, before the Honorable S. Morris Wilson, sole Judge of said Court, the following proceedings were had in said cause, to-wit:

> "In the Matter of Vicki Gaile Watson, a Child Under the Age of Eighteen (18) Years   Cause No. 318 Delinquency

"Filing of verified petition to declare child neglected (H. I.) on May 31, 1957 is now confirmed by the Court, the Court, after investigation and under the provisions of the recent decision of the Appellate Court of The State of Indiana, having authorized the Director of Public Welfare of Harrison County, Indiana to file said verified petition, the said Department performing probation functions for the Harrison Circuit Court there being no regular probation officer for the Harrison Circuit Court due to the lack of appropriation therefor by the Harrison County Council of Harrison County, Indiana, the said probation function being performed by the said Department under the provisions of the Statute of the State of Indiana, authorizing said functions to be so performed. The Court also confirms the order of issuance of notices to the father of the child providing that he attend hearing and that the child be present for the hearing.

"Comes now the petitioner in person and together with Vicki Gaile Watson in person and comes also the father, Clifford Watson in person and together with his attorney C. Bliss Eskew who enter his appearance for the father, Clifford Watson. Hear-

ing is now held by the Court. The Court, now, the evidence not being concluded herein, adjourns the hearing herein into the Vacation period of this Court with the evidence to be heard, this being a Juvenile proceedings, by the Judge of the Harrison Circuit Court in Vacation with the hour of the hearing to be 9:30 o'clock A.M., Tuesday, June 4, 1957, with the parties and the witnesses all being hereby notified to present themselves in Court again on Tuesday morning at 9:30 o'clock, June 4, 1957 with the temporary custody of said child to remain in the home of Mr. and Mrs. William Housel, with the father to be permitted to see and visit the child while in the home of Mr. and Mrs. William Housel providing that the father shall visit the child not in any condition of excessive use of intoxicating liquor and with it being further provided that the child may be visited by her father here in the Court Room this morning prior to the child being returned to its home.

"AND AFTERWARDS, to-wit: on the 4th day of June, 1957, the Harrison Circuit Court being in Vacation, before the Honorable S. Morris Wilson, Judge of said Court in Vacation, the following proceedings were had in said cause:

| In the Matter of Vicki Gaile Watson, a Child Under the Age of Eighteen (18) Years | Cause No. 318 Delinquency |
|---|---|

"Comes again the parties in person as before, and represented by counsel as before and hearing on verified petition previously filed by the Director of the Department of Public Welfare of Harrison County, Indiana is continued pursuant to the terms of the adjournment of the hearing of this cause previously. The evidence, having been concluded, and the Court, by the Judge in Vacation, not being fully advised in the premises as to its decision herein, now takes the matter of its decision under advisement, but with it being provided that the temporary custody of the child Vicki Gaile Watson shall remain with Mr. and Mrs. William Housel pending the decision of the Court, or the Judge thereof in Vacation, as the case may be, but with the child to be permitted to visit in the home of its

father on Wednesday and Sunday afternoons between the hours of 1 o'clock P.M. and 5 o'clock P.M., effective immediately, with it being provided that the father may visit said child in the home of Mr. and Mrs. William Housel, at all reasonable hours pending aforesaid decision of the Court, or the Judge thereof in Vacation, as the case may be."

"AND AFTERWARDS, to-wit, on the 28th day of June, 1957, the Harrison Circuit Court being in Vacation, before the Honorable S. Morris Wilson, Judge of said Court in Vacation, the following proceedings were had in said cause:

| In the matter of | | Cause |
|---|---|---|
| Vicki Gaile Watson, A Child Under | } | No. 318 |
| the Age of Eighteen (18) Years | | Delinquency |

"The Court, by the Judge thereof in Vacation, being now fully advised in the premises as to the matter of its decision herein, finds for the Petitioner, and further finds that the child Vicki Gaile Watson comes within the provisions of Chapter 356, of the Acts of the General Assembly of the State of Indiana for the year 1945, and particularly within the provisions of Section 6 thereof in that the Court, by the Judge thereof in Vacation, finds that said child is a neglected child as alleged in said petition. The Court, by said Judge in Vacation, does now make said child a ward of the Department of Public Welfare of Harrison County, Indiana, but with it being provided that said Department shall permit the child to remain in the physical custody of Mr. and Mrs. William Housel, with the child being permitted to visit with its father, and the father to visit with his child in the home of Mr. and Mrs. William Housel as provided previously in the order of said Court entered on June 4, 1957 subject to the further order of the Court, or the Court by the Judge thereof in Vacation. The Court, by said Judge in Vacation, further finds that the said Department of Public Welfare shall make a written report to the Court, or the Judge thereof in Vacation, each 30 days hereafter concerning the welfare and progress of said child subject to further order of the Court, or the Court by the Judge thereof in Vacation."

Appellant contends that the summons failed to state the substance of the petition and that the child's name was not mentioned in the summons, which he alleges are requirements of Burns' Ind. Stat., §9-3209. He further contends that twenty-four hours were not allowed between the time of summons and the time for hearing of the cause as required by Burns' Ind. Stat., §9-3210.

Burns' Ind. Stat., §§9-3208, 9-3209, and 9-3210, are hereby set out in full:

"§9-3208 — Information — Investigation — Petition.—Any person may and any peace officer shall give to the court information in his possession that there is within the county or residing within the county, a dependent, neglected or delinquent child. ¡Thereupon, the court shall, as far as possible, make preliminary inquiry to determine whether the interests of the public or of the child require that further action be taken. Whenever practicable such inquiry shall include a preliminary investigation of the home and environmental situation of the child, his previous history and the circumstances of the condition alleged and if the court shall determine that formal jurisdiction should be acquired, shall authorize a petition to be filed by the probation officer. The proceeding shall be entitled "In the matter of _____, a child under eighteen (18) years of age." Such petition shall be verified and shall contain a statement of the facts constituting such dependency, neglect or delinquency as defined in this act [§§9-3201—9-3225] and the name, age and residence of the child, so far as known to the person filing such petition; the names and residence of his parents, guardian or custodian, if known to the petitioner, and if not known, the petitioner should so state, of such dependent, neglected or delinquent child. [Acts 1945, ch. 356, §8, p. 1724.]"

"§9-3209—Summons—Notice—Custody of child. —After a petition shall have been filed and after such further investigation as the court may direct, *unless the parties hereinafter named shall voluntarily appear*, the court shall issue a summons re-

citing briefly the substance of the petition, and requiring the person or persons who have the custody or control of the child to appear personally and bring the child before the court at a time and place stated. If the person so summoned shall be other than the parent or guardian of the child, then the parent or guardian or both shall also be notified of the pendency of the case and of the time and place appointed, by personal service before the hearing, except as hereinafter provided. Summons may be issued requiring the appearance of any other person whose presence, in the opinion of the judge, is necessary.

"If it appears that the child is in such condition or surroundings that his welfare requires that his custody be immediately assumed by the court, the judge may cause to be endorsed upon the summons an order that the officer serving the same shall at once take the child into custody. [Acts 1945, ch. 356, §9, p. 1724.]" (Our emphasis.)

"§9-3210—Service of summons.—Service of summons shall be made personally by the delivery of attested copies thereof to the persons summoned: Provided, That if the judge is satisfied that it is impracticable to personally serve such summons or the notice provided for in the preceding section [§9-3209], he may order service by registered mail addressed to their last known addresses. It shall be sufficient to confer jurisdiction if service is effected at least twenty-four [24] hours before the time fixed in the summons for the return thereof. Service of summons, process or notice required by this act [§§9-3201—9-3225] shall be made by the sheriff or an officer of the court. The judge may authorize the payment of necessary traveling expenses incurred by any person summoned or otherwise required to appear at the hearing of any case coming within the provisions of this act, and such expenses when approved by the judge shall be a charge upon the county. [Acts 1945, ch. 356, §10, p. 1724.]"

The record clearly shows that the child in question and her father, who was the only parent living, ap-

peared. The statute set out above does not require that a person be personally served if that person appears voluntarily. It is not contended by the appellant that the appearance of the child was other than voluntary. The appellant appeared on the day of the hearing with counsel. He made neither plea nor motion to contest the court's jurisdiction over his person. Appellant cites. *Ford* v. *State* (1951), 122 Ind. App. 315, 104 N. E. 2d 406, as authority to the effect that the juvenile court cannot acquire jurisdiction unless summons is issued and served according to the statute. In that case, however, it must be observed that there was a complete absence of notice and the child's parents did not appear at the hearing which the child was made a ward of the court. In *Harris et ux* v. *Souder, Supt. etc.* (1953), 233 Ind. 287, 119 N. E. 2d 8, the court stated:

> "Under §§9-3209 and 9-3210, Burns' 1942 Replacement (Supp.), appellants were entitled to have a summons served upon them. As parents, they had an interest in the custody and welfare of their ,child, *and in the absence of waiver or statutory exceptions,* without summons the court acquired no jurisdiction over the juvenile or his parents." (Our emphasis.)

The last mentioned case specifically mentions waiver of notice in actions under the statutes governing neglected children. Burns' (1946 Repl.) §2-803, specifically provides that an appearance is the equivalent to service.

In *Mendenhall* v. *Mendenhall* (1945), 116 Ind. App. 545, 64 N. E. 2d 806, the court in construing a statute conferring jurisdiction in a divorce case declared:

> "Having once acquired such jurisdiction in any manner recognized by law and the period of inhibition having expired, there seems to be no logical reason to render a court powerless to proceed

because such jurisdiction was acquired in some other manner than by service of summons. It is our opinion that *any procedure amounting to the legal equivalent of service of summons satisfies the requirements of the statute.* In the case before us the appellant, upon learning of this action, employed counsel and in his company voluntarily appeared and submitted herself to the jurisdiction of the court." (Our emphasis.)

It must be concluded therefore that the summons was duly issued and that the appellant has waived his right to object to the service. He cannot appear at trial, proceed through two days of hearing of the cause without any objection to the alleged irregularities, and then expect to get a new trial concerning the same matter. *In re Coyle* (1951), 122 Ind. App. 217, 101 N. E. 2d 192; *Stoll, Exr.* v. *Rich, Exr.* (1928), 88 Ind. App. 639, 165 N. E. 67.

A brief review of the evidence most favorable to the appellee is necessary to determine the question of the sufficiency of the evidence to sustain the decision and whether the decision of the court is contrary to law.

Clifford Watson was married to the sister of Doris Housel, chief witness for the appellee. His wife was killed in an automobile accident in January of 1956. After the death of his wife, appellant entrusted the child, Vicki Gaile Watson, to the care of Doris Housel and her husband, William Housel. The child remained in their care until a short time prior to this action which commenced on June 1, 1957. Appellant testified on cross-examination that at the time of this hearing he was drawing $32.00 per week unemployment compensation. He further testified that he was drawing $72.00 per month Social Security for the care of his daughter, out of which he paid the Housels $8.00 per week for the child's care. There is

substantial evidence to the effect that appellant engaged in excessive drinking during the time between his wife's death and the commencement of this action. Uncontradicted testimony discloses that on numerous occasions he visited the Housels' home while intoxicated and while the child was present. On one occasion appellant left the child at a filling station where beer was known to be consumed while he went fishing. There is considerable other testimony by other witnesses concerning other improper actions of Clifford Watson toward the child, much of which is contradictory. It is a well-known principle of this court that such oral testimony will not be weighed by this court. Flanagan, Wiltrout and Hamilton's, *Indiana Trial & Appellate Practice,* §2786, p. 366, and the numerous cases cited therein. From all the evidence presented it cannot be said that the court was unwarranted in finding that the child lacked proper parental care and guardianship.

The case of *Glass* v. *Bailey, et al.* (1953), 233 Ind. 266, 118 N. E. 2d 800, well states the factors involved in matters concerning the custody of children:

"In cases of this kind the natural rights of the parent are entitled to due consideration, but the welfare and happiness of the child is the paramount consideration. *Hard and fast rules of law do not prevail.* The question rests upon the exercise of sound judicial discretion by the trial judge. *It is seldom, indeed, that this court will reverse the decision of a trial judge who has seen the child, and has seen and heard the witnesses and observed their appearance and demeanor, all of which facilities for reaching a just and safe conclusion are denied to us.* The above principles are so firmly established that the citation of authorities would be superfluous." (Our emphasis.)

The appellant cites *Orr* v. *State* (1919), 70 Ind. App. 242, 123 N. E. 470, for the principle that the court may

not recommit a child to the home where the child had resided immediately prior to a proceeding such as the one in the present case. The *Orr* case made a detailed examination of the statute which is now covered in substance by Burns' Ind. Stat., §9-3206, which is set out as follows:

" 'Neglected child' defined—The words "neglected child" as used herein, or in any other statute concerning the care, custody or control of children shall mean any boy under the age of eighteen (18) years or any girl under the age of eighteen (18) years who:

(1) Has not proper parental care or guardianship;

(2) Is destitute, homeless or abandoned;

(3) Habitually begs or receives alms;

(4) By reason of neglect, cruelty or disrepute on the part of the parents, guardians or other persons in whose care the child may be, is living in an improper place;

(5) Is in an environment dangerous to life, limb, or injurious to the health or morals of himself or others.

However, such a child receiving care from an authorized agency need not necessarily come to the attention of the court (Acts 1945, ch. 356, §6, p. 1724)."

The evidence in the present case, as in the *Orr* case, cannot sustain a finding under categories 2 through 5 of the statute. The case must rest, therefore, upon that part of the statute concerning proper parental care and guardianship. In order to better understand the court's opinion in the *Orr* case as to clause 1 of the statute, so. much of the court's opinion on that subject is hereby set out:

"With respect to clause 1 of this section of the statute, it might be contended that, since the father is insane and the mother away, the child is

without proper parental care. But that contention is excluded by the undisputed evidence and the facts found by the court. The child was left by the mother in the custody of the grandparents, who have so great affection for the little girl that they desire to keep her even to the exclusion of the mother, and the grandparents are suitable persons to be entrusted with the child's care. It is not unusual for grandparents to take into their home grandchildren whose parents have been rendered unable through misfortune to provide for them. When a grandfather takes his grandchild into his home and treats it as a member of his own family, the relation between them becomes akin to that of parent and child. He is said to stand to the child in the relation of *loco parentis*, and the doctrine of *loco parentis* has long been known to the law. 20 R. C. L. 593. Under the circumstances of the case at bar, there can hardly be a difference of opinion on the proposition that the child does not come within clause 1 of the statute under consideration."

It will be noted that in the above case the court stated that the grandparents had custody of the child and had excluded the mother from such custody. In defining the word "custody" we find that charge, control and possession appear as dominant factors, Black's Law Dictionary, Fourth Edition, p. 461, 25 C. J. S., Custody, p. 69. Referring again to the evidence in the present case, we find that appellant, Clifford Watson, never actually relinquished custody of the child to the Housels. The evidence shows that appellant was free to take the child from the Housels' home and did so on numerous occasions. The Housels cannot be said to have had charge of, control of, or possession of Vicki Gaile Watson to the exclusion of the father. The court in this case merely placed the child legally in the home where she had previously resided at the will and pleasure of her father.

Appellant cites *In re Coyle, supra,* for the premise

that a child cannot be taken from its natural parents because the court believes it is in the best interest of the state. However, this argument is of no avail because there is no showing in the record that the child in the case at bar was taken solely because it was in the best interest of the state.

Appellant next argues that because the petition in question was not filed by a probation officer, as required by Burns' Ind. Stat., §§9-3207 and 9-3208, the court acquired no jurisdiction over the subject matter of this action. He cites *Shupe* v. *Bell, et al.* (1956), 127 Ind. App. 292, 141 N. E. 351, as authority. In that case the appellee, who was a private party, filed the petition upon which the court acted. It was aptly pointed out in the *Shupe* case that the procedure used by the court failed to follow the statute in both letter and spirit. The record clearly states in the present case that the Harrison Circuit Court appointed the Director of Public Welfare of Harrison County to perform the functions of probation officer. Burns' Ind. Stat., §52-1120, (Acts 1936 [spec. sess.], ch. 3, §21), is hereby stated to show the authority of the court's action:

"§52-1120. Duties of county departments.— Subject to the rules and regulations prescribed by the state department, the county department of public welfare is hereby charged with the administration of assistance to dependent children in their own homes, old-age assistance, services and assistance to persons otherwise handicapped, the care and treatment of dependent, neglected, and handicapped children, children in danger of becoming delinquent, and such other welfare activities as shall be delegated to it by the state department of public welfare, under the provisions of this act, including services connected with assistance to the blind. The director of public welfare and his assistants shall, under the supervision of any court having jurisdiction of persons on probation and in compliance with the laws of this state relating to

probation, *perform such of the functions of probation officer or agent of the court* in any welfare matters which may be before it as the court may direct. The county department shall report to the state department at such times and in such manner as the state department may, from time to time, direct. At the request of the county welfare board, the county commissioners shall provide necessary quarters for the county department, any expense of which shall be payable from the county welfare fund. [Acts 1936 (Spec. Sess.), ch. 3, §21, p. 12.]" (Our emphasis.)

The statute clearly states that probation functions may be performed by the Director of Public Welfare in any welfare matter which may be before it as the court may direct. Under this above statute, clearly the case and treatment of neglected children are defined as welfare matters. We are of the opinion that this statute is not in conflict with, nor is it superseded by, Burns' Ind. Stat., §9-3208 (Acts 1945, ch. 356, §8, p. 1724). Both statutes *in pari materia* having to do with the welfare of children should be read in order that the clear legislative intent as expressed in the purpose of the latter *Acts of 1945, supra,* be fully complied with— namely, "to secure for each child within its provisions such care, guidance and control . . . as will serve the child's welfare and the best interests of the state."

This opinion herein being a case of first impression as to the right of the Department of Public Welfare to act in such juvenile matters as the case at bar in counties where there are no existing appointed probation officers, it is apparent that confusion might exist for the Bar of this state as to the proper method to institute proceedings involving the court's jurisdiction over such cases as the instant case.

Apparently, subsequent to the date of the institution of this appeal, our General Assembly has recognized

the fact that confusion might result as to the filing of petitions in similar situations to the case at bar in counties where for economic reasons no probation officer has been appointed under our permissive but not mandatory applicable statutes, for in 1959, Burns' §9-3208, *supra,* was amended by ch. 76, §1, p. 155, Acts 1959, by the addition of the following words:

> "Provided, That the department of public welfare of any county may file a petition with the court concerning a dependent or neglected child and request that such dependent or neglected child be made a ward of the court or a ward of the county welfare department pursuant to the laws now in effect."

We do not feel, however, that this is any recognition by our General Assembly that there was no method prior to the amendment of 1959, *supra,* by which petitions such as the one filed in the instant case could have been filed in counties where for economic reasons no probation officer had been appointed.

The applicable part of our opinion herein so holding that it was proper for the Department of Public Welfare to file said petition under existing laws at the time of the commencing of the original action of the case at bar, in so far as establishing a ruling case law, is now circumscribed by reason of the above referred to amendment. However, to have ruled to the contrary might have placed in jeopardy of both direct and collateral attack any other previous judgments in cases that may have been similarly decided to the case at bar.

It appears that both the letter and spirit of the statutes conferring jurisdiction upon the court in matters of this type have been complied with. We must keep in mind that the welfare of children is of prime impor-

tance in situations of this type. Under the circumstances of this case, it appears that the welfare of Vicki Gaile Watson was properly considered in the court below in the light of applicable statutes.

Judgment affirmed.

Myers, C. J., concurs; Ryan, J., concurs in result; and Cooper, J., dissents with opinion to follow.

## DISSENTING OPINION

COOPER, J.—I cannot agree with the prevailing opinion for the many reasons which I will set forth hereinafter. It would be a simple matter to concur in the result and evade the work that is necessary to write this dissent; however, I must live with my own conscience and I will never subscribe to the doctrine that the result justifies the means.

It is apparent that the prevailing opinion was written in anticipation of this dissent, as the opinion is replete with matters not before us, either by record or briefs.

The factual situation is very simple. The present proceedings, as shown by the record, were based upon a petition filed by a director of public welfare against a four-year-old child without any pretense of following the lawful procedure as required by law. It is apparent that the Clerk, without a proper court Order, issued summons for various persons ordering them to appear for trial the next day. The summons issued affirmatively shows that the petition filed was to declare the child delinquent, while the petition prays that the child be declared neglected. Also, there is no showing by the intrinsic record that the summons was served upon the parties therein at least twenty-four hours prior to the

hearing, nor did the summons require the child to appear in court.

The record further reveals that the court's minutes were not made until the morning of the trial, and the only interpretation which could be placed upon them, by the verbiage contained therein, is, that the proceedings were not commenced nor was the procedure, as outlined by the Juvenile Court Act, followed. There is nothing in the court's minutes to show that he ever followed the conditions precedent as required by the Legislature in order to acquire jurisdiction.

Furthermore, the court failed to appoint a guardian *ad litem* or any other responsible party, or person to represent and defend or file an answer on behalf of the child as provided for by statute, although the proceedings were against the child. It is my opinion that the court never acquired legal jurisdiction over the child named in the petition herein, the subject matter of the action, nor jurisdiction to enter the particular judgment the court did enter, and that the entire proceedings in this matter was void *ab initio*.

First, the intrinsic record which imports verity of the Harrison Circuit Court sitting as a Juvenile Court of Harrison County, discloses that its jurisdiction was not invoked in the manner provided for by the law applicable to Juvenile Courts as defined by our statutes. A review of the Juvenile Court Act, the same being ch. 347 of the Acts of 1945, reveals the Title, is as follows:

"An act providing for juvenile courts, defining their powers and jurisdiction, providing for the appointment of probation officers, referees and other employees, outlining their duties and authorities and specifying their compensation; providing for procedure in such courts including time and place of trial, providing for keeping records of

such courts, the appointment of officers for same, fixing the term and salary of judges, the manner of election, the payment of salaries, the transfer of cases to such courts, conferring juvenile jurisdiction in certain counties in circuit and superior courts, making an appropriation, and repealing of laws or parts of laws in conflict therewith, and declaring an emergency."

Our Supreme Court has stated that the Act is constitutional and must be read in *pari materia* with §§9-3201, 9-3224, 10-1812 and 10-1816, see *State ex rel. Gannon v. Lake Circuit Court* (1945), 223 Ind. 375, 61 N. E. 2d 168, and also has stated that this Act also *covers the entire subject matter of Juvenile Courts.* Our Supreme Court held, "The act of 1945 purports to create a Juvenile Court system and *covers the entire subject matter of Juvenile Courts in Indiana."* (My emphasis.) *State ex rel. Hoffman v. Marion Co. Election Bd.* (1948), 226 Ind. 421, 81 N. E. 2d 685.

In the case of *Shupe v. Bell et al.* (1957), 127 Ind. App. 292, at 295, 141 N. E. 2d 351, in discussing the Juvenile Court Act of 1945, we stated:

"The Act establishing Juvenile Courts in our state and outlining their procedure are special statutory proceedings, and the provisions of the statute must be followed. *Board of Children's Gdns. of Marion Co. v. Gioscio* (1936), 210 Ind. 581, 585, 4 N. E. 2d 199; *Ford v. State* (1952), 122 Ind. App. 315, 104 N. E. 2d 406. It is in the nature of a civil proceeding and is not triable by jury. The proceedings are of a summary character and frequently held in chambers. The records of such proceedings are kept in special dockets that are confidential in nature and not open to the public, except on order of the court; the records are frequently destroyed and disposed of after a lapse of time, and prohibits the use of the evidence given in any case or proceeding in any other court. *State ex rel. Bryant et al. v. Warrick, C. C.* (1953), 232 Ind. 655, 658, 115 N. E. 2d 742.

"We know that courts do not assume jurisdiction, *sua sponte.* In proceedings to determine whether or not delinquent, dependent or neglected children should be made wards of the Juvenile Court, the jurisdiction of the court must be invoked by the verified accusation as provided for by §§9-3207 and 9-3208, *supra.* Not until the proper charge is filed may the court cite the party charged and attain jurisdiction over his person or the subject matter of the particular case. We believe the Act itself clearly indicates jurisdiction is dependent upon strict compliance with its provisions. 'Statutes which take away, change or diminish fundamental rights, statutory remedies for rights unknown to the common law, and statutes which provide new and extraordinary remedies must be construed strictly both to the cases embraced within their terms and as to the methods to be pursued.' 59 C. J., §669, p. 1130. The intent of the Legislature in conferring jurisdiction upon Juvenile Courts and the manner in which it is to be conferred, is stated in a clear, concise and unequivocal manner."

Article 7, §8 of our Constitution provides that courts "shall have such civil and criminal jurisdiction as may be prescribed by law." Our Supreme Court, in construing this section of the Constitution relative to the Juvenile Court Act of 1945, held that this provision means that the jurisdiction is subject to legislative control. *State ex rel. Gannon* v. *Lake Circuit Court, supra.*

In reviewing the Juvenile Court Act further, I find that §9-3207, Burns' 1956 Repl., provides, in part:

"*A person subject to the jurisdiction of the Juvenile Court under this Act (§§9-3201—9-3225) may be brought before it by either of the following means and no other.*" (My emphasis.)

"(a) By petition praying that the person be adjudged delinquent or dependent or neglected; (b) Certification and transfer from any other court before which any such person is brought

charged with the commission of a crime. (Acts 1945, ch. 356, §7, p. 1724.)"

Sec. 9-3208, Burns' 1956 Repl., is the legislative implementation of §9-3207, *supra*. The Legislature saw fit to make this implementation very specific. It was entirely within its right to do so, and we are called upon to see that its mandate is specifically carried out. The unalienable rights of every person to life, liberty and property in this state and nation cannot be taken away permanently or even temporarily, except in the specific manner provided by the law authorizing it. The statute under which the trial court can exercise jurisdiction specifies what shall be done by the court. *State ex rel. Gannon* v. *Lake Circuit Court, supra; Shupe* v. *Bell, supra.*

Sec. 9-3208, *supra,* provides:

"Any person may and any peace officer shall give to the court information in his possession that there is within the county or residing within the county, a dependent, neglected or delinquent child. *Thereupon, the court shall, as far as possible make preliminary inquiry to determine whether the interests of the public or of the child require that further action be taken. Whenever practicable such inquiry shall include a preliminary investigation of the home and environmental situation of the child, his previous history and the circumstances of the condition alleged and if the court shall determine that formal jurisdiction should be acquired, shall authorize a petition to be filed by the probation officer. The proceeding shall be entitled 'In the matter of, a child under eighteen (18) years of age.' Such petition shall be verified and shall contain a statement of the facts constituting such dependency, neglect as defined in this act (*§§9-3201—9-3225)* and the name, age and residence of the child, so far as known to the person filing such petition ; the names and residence of his parents, guardian or custodian, if known to the

petitioner, and if not known, the petitioner should so state, of such dependent, neglected or delinquent child." (My emphasis.)

Juvenile Courts under our Constitution possess only such powers as are granted by the Legislature in express words, and those necessarily implied or incidental to those expressly granted, and those indispensable to the declared objects and purposes of the legislative enactment involved and to its continued existence. When the manner in which granted powers may be exercised are by statute restricted to a definite course of procedure, such procedure must be followed. *State, ex rel.* v. *McCormack* (1916), 185 Ind. 302, 305, 113 N. E. 1001; *State, ex rel. VanHoy, Treas., etc.* v. *Able, Treas.* (1931), 203 Ind. 44, 50, 178 N. E. 683; *Drinkwater* v. *Eikenberry* (1946), 224 Ind. 84, 64 N. E. 2d 399; *Schisler* v. *Merchants Trust Co.* (1950), 228 Ind. 594, 604, 94 N. E. 2d 665.

In construing the foregoing sections of the statutes in *Shupe* v. *Bell, supra,* our court stated:

"In the case of *Kessler* v. *Williston* (1947), 117 Ind. App. 690, 693, 75 N. E. 2d 676, this court stated in construing §9-3208, *supra,* that this section authorized an investigation to determine: (1) whether a petition alleging that a child is delinquent, dependent or neglected shall be filed and (2) whether the court shall proceed to a trial of the question.

"In construing the above sections, we believe it was the intent of the Legislature in such cases as the one before us that if the Judge of the Juvenile Court believed there was in his county, a delinquent, dependent or neglected child and that he further believed that *formal jurisdiction should be acquired, the court shall authorize a petition to be filed by the Probation Officer of the Court, and no one else* . . . under the acts of 1945, it is the legislative mandate that to acquire formal jurisdiction

of the subject matter, it is necessary for the petition to be filed by the Probation Officer under the order of the Judge of said Juvenile Court." (My emphasis.)

In the record in the case before us it affirmatively appears that the trial court did not follow the procedure as outlined by §9-3208, Burns', *supra,* prior to the filing of the petition. This will appear later herein when I set forth the trial court's intrinsic record which imports verity. The necessity of following rules of procedure is well stated in the Supreme Court opinion of *Hendrickson* v. *State* (1954), 233 Ind. 341, 344, 118 N. E. 2d 493, wherein Judge Bobbitt, speaking for the court, stated: "The rules of procedure must usually be observed by litigants *and they may not be ignored by the courts."* (My emphasis.) See also *Shupe* v. *Bell, supra; Board of Children's Guardianship* v. *Gioscio* (1936), 210 Ind. 581, 585, 4 N. E. 2d 199; *State ex rel. Bryant* v. *Warrick Circuit Court* (1953), 232 Ind. 655, 115 N. E. 2d 742.

Courts speak by their records and appellate tribunals can be informed only from the record made up of the entries by the Clerk and the exceptions certified by the trial judge and duly filed. *Philips* v. *State* (1930), 202 Ind. 181, 172 N. E. 904; *Riley* v. *The State* (1897), 149 Ind. 48, 48 N. E. 345.

Sec. 9-3104, 1956 Repl., Burns', provides that the Clerk of the Circuit Court shall be the Clerk of the Juvenile Court and shall keep an order book record of the proceedings in a book known as the Juvenile Court Record. This section must be construed *pari materia* with §4-324, Burns', relating to the duties of the Clerk of the Juvenile Court of each day's proceedings of the Juvenile Court in the proper order book of the Juvenile Court.

Under §9-3104, *supra*, it was incumbent upon the Clerk of the Juvenile Court to enter into the minutes or the record of the court every step, ruling or proceeding taken by the Judge of the Juvenile Court upon the day and date the court took the action in order that there be a proper order-book entry made of each and every proceeding and in order that the appellate tribunal can ascertain from the record whether or not the trial court carried out the conditions precedent mandated by the Legislature in juvenile proceedings.

We find our Supreme Court in the case of *Town of Flora* v. *The Indiana Service Corp.* (1943), 222 Ind. 253, at 258, 53 N. E. 2d 161, stated:

"The ancient common-law method of perpetuating a judgment was by engrossing the entire proceedings, including the pleadings, orders and final disposition upon parchment. The judgment was evidenced by this roll. 34 C. J., Judgments, §223 et seq. Our practice in this regard is regulated by statute. The pleadings in a cause are preserved in the office of the clerk. §2-1052, Burns' 1933, §157, Baldwin's 1934. The court proceedings are recorded in order books. §4-324, Burns' 1933, §1413, Baldwin's 1934. The clerk is required to keep a judgment docket in which is entered pertinent data with respect to each judgment rendered. §2-2520, Burns' 1933, §392, Baldwin's 1934. It is well established, however, that when any question arises as to the nature, character or effect of a judgment it is proper to look to the antecedent pleadings and orders."

The court's intrinsic record reveals that the first proceedings in this matter occurred on the 31st day of May, 1957 when the Director of Public Welfare filed the following petition with the Clerk of Harrison County:

"IN THE HARRISON CIRCUIT COURT, MAY TERM, 1957 CAUSE NO. 318, JUVENILE IN THE MATTER OF VICKI GAILE WATSON, A CHILD UNDER THE AGE OF EIGHTEEN (18) YEARS

Cause No. 318
DELINQUENCY

## TRANSCRIPT

"BE IT REMEMBERED that heretofore, to-wit on the 31st day of May, 1957, the Plaintiff, State of Indiana, by Anna M. Davis, Director of Public Welfare of Harrison County, Indiana, filed in the office of the Clerk of said court their complaint, which is in the words and figures following:

State of Indiana        Before Harrison Circuit Court
County of Harrison, SS: May Term _____ 1957

In the Matter of Vicki Gaile
Watson, a child under the age      Petition to Declare
of eighteen (18) years                Child Neglected

"Anna M. Davis, Director of Public Welfare of Harrison County, Indiana, being duly sworn upon her oath, says that Vicki Gaile Watson is a minor child under the age of eighteen years, to-wit: four years of age. That the parent of said child is Clifford Watson who resides at Route #4, Corydon, Indiana.

"Petitioner herein says that said minor child does not have the proper parental care of guardianship.

"Wherefore petitioner herein asks said court that said minor child, Vicki Gaile Watson be declared neglected and for all other just and proper relief.

/s/ Anna M. Davis
Anna M. Davis, Director
Public Welfare, Harrison County, Indiana

"Subscribed and sworn to before me the undersigned authority this 31st day of May, 1957.

/s/ John A. Cabell
Clerk Harrison Circuit Court"

Thus, it appears that the record is devoid of any minutes showing a complaince with §9-3208, Burns', *supra,* prior to the filing of the foregoing petition, nor is there any averment in the foregoing petition that Anna M. Davis, Director of Public Welfare of Harrison County, Indiana, filed the petition as Probation Officer of the Harrison Juvenile Court, pursuant to the order or under the direction of the Judge of the Harrison Juvenile Court, as required by §9-3208, Burns'. The petition reveals that she filed the petition solely as the Director of Public Welfare.

Sec. 9-3208, of the Juvenile Court Act, does not provide that the Director of Public Welfare can file a petition in juveline court, but provides, "If the court shall determine that formal jurisdiction should be acquired, shall authorize a petition to be filed by the Probation Officer."

Our Supreme Court in discussing a similar situation in the case of *Lowery* v. *State Life Ins. Co.* (1899), 153 Ind. 100, 103, 54 N. E. 442, stated as follows:

"But the point is made that the question we have here does not relate to the subject-matter of the suit, but to the want of legal capacity in the plaintiff to bring the action. We think the question reaches further than the capacity of the plaintiff to sue. The mandate of the statute is 'that no order, judgment or decree, enjoining or interfering with the business of an insurance company organized under the act, shall be made otherwise than upon the application of the Attorney-General.' Here we have very explicit language that a court shall have no power to enjoin or interfere with the business of an insurance company except upon the condition stated, namely, the application of the Attorney-General. That the Assembly had the power to fix terms to such suits cannot be doubted, and that it has provided that no one but the Attorney-General, either upon his own motion or upon the approved request of the Auditor of State, shall be

plaintiff in such suit, is beyond controversy. This being true, we have before us a plaintiff who has no right to file a complaint—who has no right or power to put in action the jurisdiction of the court —and, in the absence of such right or power, we have, in contemplation of law, a case without a plaintiff or a complaint. This situation defines itself. The right of jurisdiction in a court over a subject-matter may exist, but its valid exercise depends wholly upon its being invoked by one who is entitled under the law to set it in motion. 'The power to hear and determine a cause is jurisdiction; and it is *coram judice* whenever a cause is presented which brings this power into action. But before this power can be affirmed to exist, it must be made to appear that the law has given the tribunal capacity to entertain the complaint against the person or thing sought to be charged or affected; that such complaint has actually been preferred; and that such person or thing has been properly brought before the tribunal.' *Sheldon* v. *Newton,* 3 Ohio St. 494, 499; *Damp* v. *Town of Dane,* 29 Wis. 419. A Court has no power to do anything which is not authorized by law, and when its procedure is defined, its judicial functions are essentially controlled thereby. From this principle we have the doctrine as stated by Works on Courts and their Jurisdiction, at page 31, as follows: 'Where a special statutory mode of acquiring jurisdiction is provided, that mode must be followed or the proceedings will be void.' Freeman on Judgments, §119."

Both the trial court, as shown by the record before us, and the appellees in their briefs, admit that the Welfare Director acted in her capacity as a Probation Officer of the Circuit Court under the Acts of 1936 rather than the Probation Officer under the Juvenile Court Act of 1945.

The court's power and authority to appoint a Probation Officer of the Harrison Juvenile Court is found under §9-3117, Burns', the same being a part of the

1945 Juvenile Court Act setting up the Juvenile Court system of our state, and this Act covers the entire subject matter of Juvenile Courts in Indiana. See *State, ex rel. Hoffman* v. *Marion County Election Board, supra.*

The court's minutes affirmatively admit that he did not follow the mandate of the Legislature regarding the appointment of a Probation Officer for his Juvenile Court because the County Council of Harrison County would not furnish the necessary funds to pay such officer. The failure of the County Council to appropriate funds did not relieve the Judge of the Juvenile Court of the responsibility of carrying out the legislative mandate. Courts are required to follow the law as enacted by our Legislature, the same as individuals. It is apparent from a review of §9-3117, Burns', *supra,* that there is nothing in the Act which prohibited the Judge of the Harrison Juvenile Court from appointing a member of the local Board of Public Welfare as the Probation Officer of the Juvenile Court as a part of their welfare functions without additional salary under this Act. I cannot concede by the farthest stretch of imagination how, under the present law, the Director of Public Welfare for the County of Harrison, performing the functions of a Probation Officer of the Harrison Circuit Court, pursuant to the provisions of the Acts of 1936 (Spec. Sess.), ch. 3, §21, as found in Burns' (1951 Repl.) §52-1120, being a part of the General Welfare Act, could have any legal authority to act as the Probation Officer of the Harrison Juvenile Court, unless she was appointed such Probation Officer under the Acts of 1945, as I have heretofore stated. Our Supreme Court has held the Acts of 1945 covers the entire subject matter of Juvenile Courts.

Sec. 9-3209, Burns', requires that, "The court shall issue a summons reciting briefly the substance of the petition."

The record is devoid of any evidence showing that the court issued the summons which I will set out hereinbelow. The summons which was issued shows on its face that it failed to properly recite briefly the substance of the petition filed. The child was never charged as being a delinquent child, as is set forth in the summons. I am sure if the court had had the preliminary investigation and followed the procedure, as outlined by §9-3208, Burns', and had issued the summons as required by §9-3209, Burns', he would have known the nature of the petition he had ordered filed against the child.

The summons also fails to summons the child or to require anyone to bring the child, against whom the petition was filed, into court. The summons and the return thereon in the records reads as follows:

"AND BE IT REMEMBERED THAT AFTERWARDS, to-wit, on said 31st day of May, 1957, a Summons was issued for said defendant. STATE OF INDIANA, HARRISON COUNTY, SS: The State of Indiana to the Sheriff of Harrison County, Greetings:

"You are hereby commanded to summon Mr. and Mrs. William Housel, Mr. and Mrs. A. S. Deakins, Mr. and Mrs. Wayne Housel, Mrs. Marvin Cole, Cecil Snyder, Clifford E. Watson, Mrs. Lee Snider, Mrs. Kelso Housel to appear in the Circuit Court of Harrison County, before the Judge thereof, on the 1st day of June, 1957 at 9:30 A. M. at the Court House in Corydon to answer the complaint of Anna M. Davis, Director of Public Welfare petition to declare child delinquent and of this make due return.

'WITNESS, the Clerk of said Court, and the seal

thereof, hereunto affixed at Corydon, this 31st day of May, 1957.

"/s/ John A. Cabell, Clerk of Harrison Circuit Court    I hereby certify that the above is a true copy of the original summons

/s/ Orlin L. Didelot, Sheriff

"This summons came to hand May 31, 1957, and was served as commanded by reading to and in presence and hearing of all within named defendants. Mr. and Mrs. William Housel, Mr. and Mrs. A. S. Deakins, Mr. and Mrs. Wayne Housel, Mrs. Marvin Cole, Fay and Cecil Snyder, Mrs. Lee Snider, Clifford D. Watson, Mrs. Kelso Housel.

"This summons came to hand _____, 19 ____, and I served the same by leaving a true and certified copy at the last and usual place of residence of within named

"This, the 31st day of May, 1957.

/s/ Orlin L. Didelot, Sheriff"

Sec. 9-3209, Burns', requires that: "The court shall issue a summons reciting briefly the substance of the petition." The record before us is devoid of any showing that the court ever issued a summons and the summons which apparently the Clerk issued shows on its face that it failed to properly recite briefly the substance of the petition filed as required by the statute. The child was never charged with being a delinquent child, as is set forth in the summons. The record is also devoid of the statutory requirement that, "The entry on the docket shall show whether or not the summons has been fully served and *notice given in due time* for trial and whether or not the issues have been formed." (My emphasis.) Sec. 2-1105, Burns'. Also, there is no entry, nor does the summons on the face of it show, that the service of the summons was affected at least twenty-four (24) hours before the time fixed in

the summons for the return thereof, as provided for by §9-3210, Burns'.

It is apparent upon the face of the summons that the child against whom the petition was filed was not summoned into court, nor was anyone required by the summons to bring the child into court.

Our Supreme Court, in discussing cases concerning dependent or neglected children in juvenile courts has stated, ". . . is in the nature of a civil proceeding. It is not a criminal proceeding and is not done in the name of the state. . . . It is a special statutory proceeding and the provision of the statute must be followed." *Board of Children's Guardianship* v. *Gioscio, supra; State ex rel. Bryant* v. *Warrick Circuit Court, supra.*

It is the law under our civil procedure that, "An infant-defendant shall appear and defend by guardian appointed by the court or chosen by such infant with the consent of the court." Burns', §2-209. Also, Burns', §2-209a, provides: "All courts shall have power to appoint a guardian *ad litem* to defend the interests of any minor impleaded in any suit; and to permit any person, as next friend, to prosecute any suit in any minor's behalf."

The appellees in their brief admit that the proceedings before us were against the child because in the appellees' brief they maintain, in substance, that the only motion for a new trial was filed by the father and natural guardian, and, as there was no motion for a new trial filed either by the child or by her next friend or by Watson as her next friend, there was no question saved except in respect to Watson individually, and the appellee is unable to perceive any authority by which he appears in this proceeding at all.

Our Supreme Court, in discussing Juvenile offenses

relating to minors in the case of *Harris, et ux.* v. *Souder, Supt., etc.* (1954), 233 Ind. 287, 292, 119 N. E. 2d 8, stated:

"In the absence of express statutory authority, neither the infant, nor his guardian ad litem, can waive issuance and service of process, nor may either admit an issue against the infant in a suit at law or in equity. *Wetherill* v. *Harris* (1879), 67 Ind. 452, 472; *DeLa Hunt* v. *Holderbaugh* (1877), 58 Ind. 285; *Abdil* v. *Abdil* (1866), 26 Ind. 287; *Richards* v. *Richards* (1861), 17 Ind. 636; *McEndree* v. *McEndree* (1859), 12 Ind. 97; *Pugh* v. *Pugh* (1857), 9 Ind. 132; *Martin* v. *Starr* (1855), 7 Ind. 224, 226; *Robbins* v. *Robbins* (1850), 2 Ind. 74; *Craine* v. *Parker* (1849), 1 Ind. 374; *Thompson* v. *Doe* (1847), 8 Blackf. 336; *Hough* v. *Doyle* (1846), 8 Blackf. 300; *Hough* v. *Canby* (1846), 8 Blackf. 301."

Our court in the case of *Ford* v. *State* (1951), 122 Ind. App. 315, 317, 104 N. E. 2d 406, stated: "The juvenile court cannot acquire jurisdiction in this type of action unless summons is issued and served as provided by the statute. . . ."

Our Supreme Court in the case of *Harris, et ux.* v. *Souder, Supt., supra,* at 290, 291, stated:

"In *Ford* v. *State* (1952), 122 Ind. App. 315, 104 N. E. 2d 406, the Appellate Court held that lack of notice under §9-3209, Burns' 1942 Replacement (Supp.), *made the judgment void. We agree with this contention.* (My emphasis.)

Because of the many omissions and the authorities I have heretofore cited, I am of the opinion that if we are to afford the child involved in this petition due process of law, as guaranteed by our Constitutions, it is incumbent upon us to reverse the trial court, with instructions to bring these proceedings anew, and that

the statutes applicable to Juvenile Courts and the procedure thereof be followed strictly, as I do not believe that the juvenile court procedure of this state has been so far socialized and individual rights so far diminished that a child may be taken into juvenile court and be made a ward of the juvenile court without the strict compliance of the legislative mandate relating thereto. "When there is a lack of jurisdiction of the subject-matter in the trial court, the jurisdictional question may be raised at any time before final decision and in any manner and if not raised by a party it is our duty *sua sponte* to raise and determine it. *State ex rel. Ayers* v. *Ewing, Judge* (1952), 231 Ind. 1, 10, 106 N. E. 2d 441, and cases there cited." *Wedmore* v. *State* (1954), 233 Ind. 545, 549, 122 N. E. 2d 1.

As the court's entire proceedings now before us were without jurisdiction of the subject-matter and without jurisdiction of the child, its judgment is wholly void.

NOTE.—Reported in 165 N. E. 2d 770. Transfer denied in which Jackson, C. J., dissents.