**Patricia McCARTHY, Appellant (Respondent Below),**

v.

**Laurence J. McCARTHY, Appellee (Petitioner Below),**

and

**Marion County Department of Public Welfare, Appellee.**

**No. 2–379A63.**

Court of Appeals of Indiana, Fourth District.

March 26, 1980.

Rehearing Denied May 1, 1980.

David E. Gilman, Indianapolis, for appellant.

James A. Buck and John P. Tobin, Jr., Buck, Berry, Landau, Breunig & Quinn, Indianapolis, for appellee.

CHIPMAN, Judge.

Patricia McCarthy brings this appeal from the trial court's order declaring her son, Patrick, to be a neglected child and

awarding custody to Laurence McCarthy, her ex-husband and Patrick's father. We affirm.

## ISSUES

Patricia raises three issues for review:

I. Whether the evidence is sufficient to support the trial court's finding of neglect.

II. Whether the trial court erred by admitting evidence concerning Laurence's fitness as a parent.

III. Whether the trial court erred in its visitation order.

## FACTS

April 19, 1978   A case worker for Marion County Department of Public Welfare, Derelle Watson, made an investigation of Patricia McCarthy as part of a custody study, a portion of her report reads:

THE HOME

The house which Mrs. McCarthy and her son are presently renting is of green frame and has an attached garage. The home was very clean and neat although rather sparsely furnished. . . . Patrick's room is the best furnished room in the house. It contains Patrick's bed, which was brought from Maine, and his chest of drawers.

The room is also attractively decorated and is filled with toys and books. . .

The home has a fenced back yard and Mrs. McCarthy presently owns three dogs. One dog is approximately 13 years old and is very gentle and lethargic. A second dog, a Doberman pinscher, is active but did not appear dangerous. This dog is about one year old. The McCarthys also have a four month-old Irish setter puppy.

.     .     .     .     .

June 21, 1978   Laurence and Patricia were granted a divorce by a Maine court, custody of Patrick was awarded to Patricia.

July 25, 1978   A caseworker for Public Welfare, Angie Bays, visited Patricia's home, a portion of her report reads:

An investigation was requested by Dr. McCarthy. On July 25, 1978, I made a visit to the home of Mrs. McCarthy. The car was in the driveway, the door was open and I observed five dogs in the living room, one being a Doberman Pincher, [sic] another being an Irish Setter. The living room was very cluttered and the odor from the room was very offensive. No one would answer the door. I went next-door and spoke with an 11 year old boy. He stated that he was sure Mrs. McCarthy was home because he had seen Todd in the home just prior to my visit. I went back to the house and knocked, but still no answer. I went to the other house next-door and talked with a man. He stated that Patrick often came to his house in the evening to talk with him. The man asked me if I was there regarding her [sic] older son, Todd. I went back to Mrs. McCarthy's home and knocked again. I even called for her by name. I then went back and spoke with the little boy. He stated that he had seen Mrs. McCarthy peeking out the far end window. My supervisor was contacted and I was advised to contact the police for assistance. The police officer arrived and Mrs. McCarthy answered the door. When Mrs. McCarthy refused my admittance and said she was tired of being harassed, I gave her my telephone number and name. She said that she wanted to speak with her lawyer. She then questioned the whereabouts of Patrick and wanted to go into the house and look for him. I then left her home.

July 27, 1978   Patricia was arrested on a charge of contributing to the delinquency of a minor, a fifteen-year-old boy named Todd Warweg. In addition, the Indianapolis police received a telegram from Maine officials requesting them to hold Patricia for extradition on a charge of terrorizing, a class C felony.

July 29, 1978   Patrick was made a temporary ward of the Welfare Department

and taken to the Marion County Children's Guardian's Home.

An Information of Dependent, Neglected, Delinquent Child was filed by the Marion County Department of Public Welfare concerning Patrick McCarthy. Laurence filed a petition to have Patrick adjudicated a neglected child.

August 3, 1978 An emergency hearing was held. Patrick was continued as a temporary ward of the Marion County Welfare Department but was released from the Guardian Home to Laurence's custody.

August 25, 1978 Angie Bays made another visit to Patricia's home. She found the house "spotless".

September 12 and 13, 1978 A hearing was held and the matter was taken under advisement until the court was informed of the disposition of the pending criminal charges.

October 13, 1978 The Court was informed all criminal charges against Patricia had been dismissed. It found:

Patrick McCarthy is a neglected child as defined in IC 31–5–7–6,[1] in that said child has not received proper parental care or guardianship and that by reason of neglect on the part of the custodial parent, the child was living in an environment dangerous to his health and morals.

and ordered:

2. That Patrick McCarthy is hereby ordered to be placed in the custody of his father, Laurence J. McCarthy.

3. That Patricia P. McCarthy shall be entitled to visitation with Patrick McCarthy as follows:

(a) During the summers of 1979 and 1980, Patricia McCarthy shall be entitled to visit with said Patrick McCarthy for a period of two weeks each summer at whatever place or location Laurence J. McCarthy is residing with Patrick McCarthy. Laurence J. McCarthy shall pay the expense of her transportation to said location at said times. Beginning with the summer of 1982, Patricia P. McCarthy shall be entitled to visitation with Patrick McCarthy, wherever he may be, for a period of one month each summer, with Laurence J. McCarthy and Patricia P. McCarthy each being liable for one-half of the costs of transporting Patricia McCarthy to said location.

## I. SUFFICIENCY OF THE EVIDENCE

Patricia faces a considerable burden when challenging a finding of neglect for lack of sufficient evidence. It is a well known rule that this court must view the facts in a light most favorable to a judgment and will not reweigh evidence nor judge the credibility of witnesses. More importantly, a finding of neglect rests in the sound discretion of the trial court.

The question [of neglect] rests upon the exercise of a sound judicial discretion by the trial judge. *It is seldom, indeed, that this court will reverse the decision of a trial judge who has seen the child, and has seen and heard the witnesses and observed their appearance and demeanor, all of which facilities for reaching a just and safe conclusion are denied to us.* The above principles are so firmly established that the citation of authorities would be superfluous.

*Glass v. Bailey, et al.,* (1954) 233 Ind. 266, 118 N.E.2d 800, 801, emphasis added in *Watson v. Department of Public Welfare of Harrison County,* (1960) 130 Ind.App. 659, 165 N.E.2d 770, 778.

In addition to the caseworker's reports introduced at the hearing several wit-

1. IC 31–5–7–6 (repealed October 1, 1979) in part reads:

The words "neglected child" as used herein, or in any other statute concerning the care, custody or control of children shall mean any boy under the age of eighteen (18) years or any girl under the age of eighteen (18) years who:

(1) Has not proper parental care or guardianship;

.  .  .  .  .

(5) Is in an environment dangerous to life, limb, or injurious to the health or morals of himself or others.

.  .  .  .  .

nesses testified the house was unsanitary, the primary cause being dog feces. Vickie Warweg testified the first caseworker's report made in April, 1978 was subsequent to a three week period in which Vickie, Todd and Patricia cleaned up dog urine and feces, hung curtains and painted the house. Vickie testified the cleaning spree was required because when she moved into the house it was decrepit. She explained her condition on July 25, 1978, to be because she was rudely awakened and threatened by the presence of the caseworker and police officers. She attributed the condition of her house that day to her priorities and the fact that there were two puppies who were not housebroken inside while she was asleep.

Laurence testified on two occasions during their marriage Patricia had attempted suicide by taking an overdose of prescription drugs. Several witnesses testified Patricia was in the habit of taking unidentified pills, even with beer. Two witnesses, Vickie Warweg and the apartment manager, testified to a specific incident in December of 1977 dealing with apparent drug use by Patricia. Vickie had been keeping Patrick and became worried when she could not contact Patricia by telephone the day after he was to be picked up. They entered Patricia's apartment and found the apartment dirty and cluttered, with dog feces and urine all over the floor. Patricia was in bed. They had difficulty arousing her and found an open nearly empty bottle of valium near the bed. Patricia did not deny her suicide attempts but denied any present use of drugs. She attributed her condition in the December 1977 incident to the fact that she had been studying nonstop for three to four days, had had migraine headaches and was trying to sleep. She testified the valium was a veterinarian prescription, not for her use.

Ron Warweg testified his son, Todd, spent nights at Patricia's house when he was not babysitting for Patrick without parental permission. One morning he saw his son getting out of Patricia's bed while she was still lying in it; she had on a nightgown and Todd had on a pair of cut-off jeans. Patricia characterized her relationship with Todd as close and maternal. He was Patrick's babysitter for most of the time she had Patrick in Indianapolis. He spent nights at her house babysitting when she worked a nightshift, from 11:00 p. m. to 7:00 a. m. When Todd spent the night at her house while she was home she said she thought it was always with his parents' permission and they always slept in separate rooms. She explains Ron Warweg's testimony as his misconception of a time when he saw Todd and her sitting on her bed talking.

Several witnesses testified Patricia was emotionally stable, capable of rearing a child and her relationship with Patrick was good. Only one of those witnesses had been to her house, a co-worker who had lived there during the first two weeks of June, 1978. He testified the house was clean and the dogs were outside at that time.

There was obviously contradicting evidence presented on the issue of neglect. But:

> [W]e are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

*Brickley v. Brickley,* (1965) 247 Ind. 201, 210 N.E.2d 850, 852. From all the evidence we cannot say the trial court was unwarranted in finding Patricia did not afford Patrick proper parental care.

## II. ADMISSION OF TESTIMONY CONCERNING LAURENCE'S FITNESS AS A PARENT

Patricia contends the court improperly redetermined the issue of custody. She asserts this issue could only have been properly presented by a change of custody petition in the divorce proceedings. Thus she concludes the trial court erred by admitting evidence on Laurence's fitness as a parent.

The court's actions are authorized by IC 31–5–7–15,[2] (repealed October 1, 1979), which in part reads:

> If the court shall find that the child comes within the provisions of this chapter [31–5–7–1—31–5–7–25], it may by order duly entered, proceed as follows:
>
> (1) Place the child . . . in the custody of a relative or other fit person, upon such terms as the court may determine . . ..

Under this statute the trial court's need for information relevant to the placement decision is obvious. Clearly it was not error for the trial court to admit such evidence.

## III. VISITATION

■ Patricia contends the court erred in the visitation provisions[3] of its order in three ways:

1) no evidence was presented concerning visitation,

2) she was not granted sufficient visitation, and

3) no visitation was provided for 1981.

We believe the trial court should have broad discretion when devising a custody arrangement. IC 31–5–7–15(1) states the court may place a neglected child in custody of a fit person "upon such terms as the court may determine". The court had before it sufficient evidence of the capabilities of the parties and their inter-relationships to devise a visitation arrangement. The visitation order here appears equitable, does not abuse the discretion afforded the court by IC 31–5–7–15, nor does it exceed the scope of the evidence.

We affirm.

MILLER, P. J., concurs.

YOUNG, J., concurs in result.

---

2. In her Reply Brief Patricia contends this statute is inapplicable because the court lacked jurisdiction due to Laurence's filing the petition for a determination of neglect instead of the probation officer. IC 31–5–7–8. Patricia has waived any possible error on this basis by her failure to present it at the trial court level. *Hogg v. Peterson*, (1964) 245 Ind. 515, 198 N.E.2d 767.

3. Laurence contends this issue was made moot by a September 21, 1979 visitation order from the Family Court of the First Circuit, State of Hawaii. He attached a copy of the order, certified by that court's clerk, to his Appellee's Brief but never made it a part of the record. In any event Laurence's argument is unpersuasive since the order deals only with visitation provisions for the summer of 1979.