STATE EX REL. JOHNSON *v.* WHITE CIRCUIT COURT ET AL.

[No. 28,373. Filed February 6, 1948.]

*Thomas F. O'Mara,* of Terre Haute, and *J. Edward Barce,* of Kentland, for relatrix.

*Russell Gordon,* Judge, *pro se,* of Monticello, for respondent.

EMMERT, C. J.—This is an original action for a writ of mandate to require the White Circuit Court, acting

as a juvenile court, to strike out and expunge from the record, an entry and order made by Robert E. Thompson, as special judge of said court, on May 7, 1947, modifying a previous order made by the same special judge which committed a juvenile offender to the Indiana Boys' School. The return filed by the respondent admits the material allegations of relatrix' petition, and states, "this respondent stands ready and willing to assume jurisdiction in the matter and to carry out and perform any order or orders which this Court may deem proper and enter in this cause." To this return the relatrix filed a demurrer. Rules 2-35 and 2-36 make no provision for demurrers to a return in this court, and we shall therefore determine this cause upon the merits of the petition.

The petition in substance alleges that the relatrix, on November 14, 1946, subscribed and swore to an affidavit charging a male juvenile, of the age of seventeen (17) years, with the crime of rape perpetrated upon her April 14, 1946, which affidavit was approved by the prosecuting attorney of the 39th Judicial Circuit of the State; that said prosecuting attorney in open court presented said affidavit to the White Circuit Court, which, without filing or permitting the same to be filed, transferred the affidavit to the juvenile court of White County; that thereafter a change of judge was had from the regular judge and Robert E. Thompson was thereafter selected, qualified and assumed jurisdiction in said juvenile proceedings; that thereafter, after a hearing, on the 23rd day of April, 1947, said juvenile court ordered the defendant committed to the Indiana Boys' School, and that he was delivered to the custody of said institution pursuant to commitment; that on May 7, 1947, the same special judge, in the absence of relatrix, and without any petition or proceedings filed

before him, did modify the order of commitment by ordering the defendant released from the Indiana Boys' School and placed him in the custody of his father, without the action or consent of the Board of Control of the Indiana Boys' School, and that said defendant has been released from said custody and delivered to the custody of his father. Subsequently, relatrix filed a verified petition with the clerk of the White Circuit Court which alleged that the special judge had no jurisdiction to modify the order of commitment, and prayed that the regular judge strike out and expunge from the record the proceedings entered on May 7, 1947, that the regular judge cause such writs to issue as might be properly required to carry out the order of commitment of April 23, 1947, and cause said defendant to be returned to the custody of the Indiana Boys' School. Process was issued and served upon the defendant and his father giving notice of the petition, and on September 8, 1947, the regular judge of the court refused to entertain or assume jurisdiction of said petition, assigning as a reason therefor that the jurisdiction of the cause was in the special judge Robert E. Thompson.

The first question to be decided is whether the relatrix has a sufficient interest to maintain the action in the name of the State on her relation. This precise question has never been decided by a court of last resort of this State.

If the offense had been committed by an adult, or if the circuit court had not waived jurisdiction and transferred the proceeding to the juvenile court, the prosecution would be brought by the State of Indiana. From the time the law recognized that crimes were offenses against the Crown, as the representative of the people and organized society, and the punishment should be inflicted by the sovereign rather

than as a matter of personal vengeance by the victim, his relatives or friends, the victim has not been a party to the proceeding.

> "The foundation of the whole system of criminal procedure was the prerogative of keeping the peace, which is as old as the monarchy itself, and which was, as it still is, embodied in the expression, 'The King's Peace,' the legal name of the normal state of society. . . ." Stephen, A History of the Criminal Law of England, pp. 184, 185.

> "The State, as representing society at large, springs from a moral necessity. It is not a matter of choice whether we will live under government. Some government, some form of civil organization, we must have. And the State is not to be guided simply by expediency, nor by the merely external purposes of society. It has an existence of its own to maintain, a conscience of its own to assert, moral principles to vindicate. Penal justice, therefore, is a distinctive prerogative of the State, to be exercised in the service and in the satisfaction of the duty of the State, and rests primarily on the moral rightfulness of the punishment inflicted. . . ." 1 Wharton's Criminal Law (12th Ed.), pp. 10, 11, § 10.

The distinction between torts and crimes is based upon the public nature of the criminal offense. "Although the same act may constitute both a crime and a tort, the crime is an offense against the public pursued by the sovereign, while the tort is a private injury which is pursued by the injured party." 14 Am. Jur. 755, § 3. The same distinction has been noted by another authority in the following language: "Therefore, the real distinction between a tort and a crime is to be sought for, not in a difference between their tendencies, but in the difference between the methods by which the remedy for the wrong is pursued, a wrong for which the remedy is pursued by and at the discretion of the individual injured or his repre-

sentative being a tort, and a wrong for which the wrongdoer is proceeded against by the sovereign or state for the purpose of punishment being a crime." 16 C. J. 55, § 3.

The most frequent application of the rule that crime is an offense against the state, occurs in applying the hearsay rule to exclude statements made by the victim. Such statements are not regarded as admissions against the state, since the victim is not a party to the prosecution .

> "It is well settled that the person injured, whether living or dead, is not a party to the prosecution, and his admissions and statements are not evidence either for or against the accused, unless of the *res gestae,* dying declarations, or threats, but are hearsay, the same as those of any other third person." *Shields* v. *The State* (1897), 149 Ind. 395, 403, 49 N. E. 351; See also 16 C. J. 639, § 1269.

Nor may private individuals institute criminal prosecution. "Criminal prosecutions cannot be instituted by private individuals. They may be initiated by grand jury indictment. Formerly the only other method was an information. For this latter procedure the Legislature substituted prosecutions by affidavit, approved by the prosecuting attorney. The public policy, evidenced by the requirement that the affidavit must be approved by the prosecuting attorney, is apparent in former statutes. . . ." *State ex rel. Freed* v. *Martin Circuit Court* (1938), 214 Ind. 152, 154, 14 N. E. (2d) 910. "Judges and courts may not substitute their discretion for that of the prosecuting attorney. Inquisitorial powers are vested in the office of the prosecutor and in grand juries, and not in judges and courts. . . ." *State ex rel. Spencer* v. *Criminal*

*Court, Marion Co.* (1938), 214 Ind. 551, 556, 15 N. E. (2d) 1020, 16 N. E. (2d) 888.

The history of juvenile jurisdiction reveals that the state assumed this authority as *parens patriae* for the welfare of all infants. 11 C. J. 285.

"Under the ancient common law, the king, as *parens patria,* was deemed to have charge of all persons who, by reason of their youth and inexperience, were unable to care for themselves, or to protect their estates. In the exercise of this supervision, the chancellor, who was originally an ecclesiastic, and the keeper of the king's conscience, was the guardian of all infants. 9 Enc. Pl. & Prac. 890; Black, Law Dict. tit. 'Chancellor'; 1 Chit. Bl. ★ 462, note 8; 2 Story, Eq. Jur. § 1332." *Butterick* v. *Richardson* (1901), 39 Ore. 246, 64 P. 390, 391.

The State of Indiana, acting by its General Assembly, has continued and extended this jurisdiction under the various juvenile acts.

"The power conferred upon the juvenile court under this act is of the same character as the jurisdiction exercised by courts of chancery over the person and property of infants, and flows from the general power and duty of the state *parens patriae* to protect those who have no other lawful protector." *Dinson* v. *Drosta* (1907), 39 Ind. App. 432, 434, 80 N. E. 32, 33.

This case correctly held that in view of the equitable nature of the proceedings, the juvenile delinquent was not entitled to a trial by jury.

An act done by an infant, which under § 9-3204, Burns' 1942 Replacement (Supp.), (Acts 1945, ch. 356, § 4, p. 1724), is defined as an act of juvenile delinquency, is not a crime. *In Re Pierson* (1943), 114 Ind. App. 195, 203, 51 N. E. (2d) 91. This is specifically declared by the statute. § 9-3215, Burns' 1942 Replacement (Supp.), 1945 Acts, ch. 356,

§ 15, cl. 5, p. 1724. As a result, a fugitive juvenile offender may not be extradited, but if he has been placed in the custody of a state institution, the state as his guardian is entitled to his custody in another state. 1946 Ind. O.A.G. p. 95, No. 29. Nevertheless, an act of delinquency is a wrong against the state for which the state has provided corrective as well as protective remedies. The state is not designated as a party plaintiff in the proceedings, which under § 9-3208, Burns' 1942 Replacement (Supp.), (1945 Acts, ch. 356, § 8, p. 1724) must be entitled, "In the matter of ——, a child under eighteen (18) years of age," yet it is the state speaking to assert its paramount interest in the protection of society and infants even though it is not named in the petition. This construction is further supported by the fact that by § 9-3224, Burns' 1942 Replacement (Supp.), (1945 Acts, ch. 356, § 24, p. 1724) it is provided:

> "Neither *the state* nor the county department of public welfare, nor any other person *bringing the case of a child coming within the provisions of this act,* shall be liable for the payment of any costs...."
> (Italics added.)

Moreover, when a juvenile court acquired jurisdiction by waiver of jurisdiction by the circuit or criminal court when an affidavit is presented and brought by the State of Indiana, as was done in this case, there is no requirement in the juvenile acts that an amended affidavit or petition be filed omitting the name of the state.

In a criminal case, if after a judgment of conviction and imprisonment of a defendant the trial judge should make a void order changing the judgment and ordering the release of the defendant, would the victim of the crime have the right to demand that the trial judge expunge and vacate the void order? Since the adminis-

tration of the criminal laws is exclusively the function of the state, in which the victim is not interested personally, it is manifest he would not have that right, but the proper enforcement of the criminal laws and the execution of the valid judgments should be the concern of the state speaking through its proper prosecuting attorney or the Attorney General.

Likewise, the same considerations of public policy compel the same conclusions if the case be one involving a juvenile offense. The victim is not prosecuting a private wrong, nor is the victim a party to the proceedings. There is particular danger in permitting any victim of either a criminal or juvenile offense to control any step of the proceeding, else we revert to the ancient philosophy of a barbarian society when justice was regarded as a matter of personal vengeance and retribution.

The relatrix has cited many cases holding that even though a private citizen alleges no special damage, yet as a member of the general public he had the right to mandate a public official to do his duty. *Hamilton v. The State* (1852), 3 Ind. 452; *The State v. Hamilton* (1854), 5 Ind. 310; *The Board of Commissioners of Clarke Co. v. The State ex rel. Lewis* (1878), 61 Ind. 75; *Board of Comm'rs. of the County of Decatur v. The State ex rel. Hamilton* (1882), 86 Ind. 8; *Wampler v. State ex rel. Alexander* (1897), 148 Ind. 557, 47 N. E. 1068. In most of these cases the relator was a property owner and taxpayer, and in each of them property rights were involved. None involved the administration of the criminal law or the juvenile law. For these reasons we do not feel these authorities warrant an extension of the rule by permitting private individuals to mandate judges in juvenile proceedings.

In view of the conclusion that the relatrix does not have a sufficient interest to maintain the action, it is unnecessary to consider whether the order modifying the judgment committing the defendant to the Indiana Boys' School was void. *Willets* v. *Ridgway* (1857), 9 Ind. 367; *The Carmel Natural Gas and Improvement Company* v. *Small* (1897), 150 Ind. 427, 47 N. E. 11, 50 N. E. 476.

The alternate writ of mandate heretofore issued is vacated and dissolved.

NOTE.—Reported in 77 N. E. (2d) 298.