v.

STATE of Indiana, Appellee–Petitioner.

No. 10A04–0911–JV–630.

Court of Appeals of Indiana.

March 25, 2010.

Bart M. Betteau, Betteau Law Office, LLC, New Albany, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

A juvenile facing charges of delinquency and her mother were given a form apprising them of the rights, but not waiving those rights. They signed the form. They never retained an attorney during the delinquency proceedings. The trial court never inquired into their ostensible decision to proceed pro se, nor did it advise them regarding the perils of self-representation. Indeed, there are no discussions in the record whatsoever regarding the right to an attorney, the advantages of retaining one, or their ability to represent themselves. Under these circumstances, we find that A.S. and her mother did not knowingly and voluntarily waive their right to counsel.

Appellant-respondent A.S. appeals the denial of her request for relief from the trial court's judgment that she was a delinquent child. A.S. argues that the trial court erred by treating her motion as a petition for post-conviction relief and that her motion should have been granted because she did not knowingly and voluntarily waive her right to counsel during the delinquency proceedings. Finding that the record does not establish that A.S. knowingly and voluntarily waived her right to counsel, we reverse.

## FACTS

On May 13, 2008, the State filed a delinquency petition against A.S. for leaving home and acts that would have constituted battery and theft had those acts been committed by an adult. Prior to the May 28, 2008, initial hearing, A.S. and her mother (Mother) were presented with a document entitled "Advisement of Rights for Juvenile Hearing" (Advisement), which reads, in pertinent part, as follows:

> I understand that I have the following rights: to know the nature of the allegation(s) against the juvenile; to be represented by an attorney; to a speedy trial; to confront all witnesses; to subpoena witnesses; to introduce evidence on my own behalf; to refrain from testifying against myself; and to have the State of Indiana prove that I committed the offense by a preponderance of the evidence if a petition to modify or to prove that I committed the offense beyond a reasonable doubt if a delinquency petition.
>
> I understand that I may hire an attorney of my own choice, waive my right to an attorney, or ask the Court to appoint an attorney to represent me.

Appellant's App. p. 39. Both A.S. and her mother signed the Advisement.

At the initial hearing, the trial court confirmed that A.S. and Mother had signed the Advisement but did not ask A.S. if she wanted legal representation, inquire as to whether she desired appointed counsel, or advise her as to the hazards of proceeding pro se. Mother inquired about potential witnesses:

> [MOTHER]: On the Battery charge, I do have witnesses that were there that states that [A.S.] wasn't the one that started it. So how do I go about that?
>
> [STATE]: Just bring 'em.
>
> THE COURT: Bring those to [the State's attorney].

[MOTHER]: Just bring 'em in?

[STATE]: Or the witness statements.

\* \* \*

[MOTHER]: Okay, the witness statements and everything? Okay, I just wanted to make sure.

Tr. p. 8–9. The trial court told Mother to bring her witnesses—or their statements—to the next pretrial conference. Thereafter, the trial court made the following entry in the Chronological Case Summary (CCS):

> INITIAL HEARING HELD.... Juvenile in person and with her Mother. Witnesses sworn, testimony heard and the Court outlines rights, allegations and possible penalties....

Appellant's App. p. 2. Notwithstanding the CCS entry, no witnesses were sworn, no testimony was heard, and the trial court did not outline any rights, allegations, or possible penalties at the hearing.

An out-of-court pre-hearing conference between Mother, A.S., and the deputy prosecutor was conducted on June 3, 2008. At some point, all three signed an "Agreement of Admission" (Agreement), Id. at 42. The Agreement called for A.S. to admit all of the allegations, be placed on probation, and to receive a suspended sentence.

At a disposition hearing on June 18, 2008, A.S. admitted all of the allegations. The trial court did not confirm that A.S. had knowingly waived her right to counsel. The trial court found A.S. to be delinquent and ordered her to comply with the terms that were set forth in the Agreement.

On November 19, 2008, A.S. filed a "Petition for Relief from Judgment & Request for Findings of Fact & Conclusions of Law" (Petition). Id. at 58–62. A.S. alleged that her right to counsel and due process had been violated because she had been permitted to go through the juvenile

proceeding without counsel and without validly waiving her right to counsel.

On December 1, 2008, A.S. filed a brief in support of the Petition and an affidavit stating

2. I was present, with my mother [ ], on May 28, 2008 for an initial hearing on this case. On that date I was given a form to sign entitled "Advisement of Rights for Juvenile Hearing." No further explanation of the form was offered.

3. I did not have a discussion with the magistrate, or anyone else, about waiving my right to counsel.

4. I did not know I would be representing myself or what the implications of that were.

5. On May 28 I was given a date to meet with the Deputy Prosecuting Attorney. . . .

6. During the meeting, . . . I was given a plea offer. [The deputy prosecutor] said it was "the only offer" she would be making and that "it won't get any better, this is what will happen after a fact finding."

7. I was not advised that I had a valid self defense claim and an attorney could have investigated and presented that claim for me.

*Id.* at 77.

That same day, the State responded that A.S. was procedurally defaulted because she had filed a petition for Relief From Judgment under Trial Rule 60 instead of filing a petition for post-conviction relief. More particularly, the State asserted that "the time for filing a motion to correct error or for taking an appeal having lapsed, the juvenile is required to pursue post-conviction relief under the Indiana Rules of Procedure for Post Conviction Remedies." *Id.* at 78.

On December 17, 2008, the trial court held a hearing on A.S.'s Petition, which the trial court took under advisement. Thereafter, on January 7, 2009, the trial court held a hearing on other, unrelated issues involving A.S. At that hearing, the trial court orally denied the Petition, stating that

I believe that this is more akin to something in the criminal ranks of a petition for post conviction relief. It appears to be a collateral attack on the proper nature of the, of whether [A.S.] was validly on probation and to that extent I'm going to deny the Motion for relief of judgment. I think it is a good and creative argument. . . . I do not believe this is the proper venue for the making of that argument. And so, based on that, I am going to deny the Motion for Relief from Judgment. . . .

*Id.* at 316–17.[1] A.S. now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ A.S. first argues that the trial court erred by denying her Petition simply because it was in the guise of a Rule 60(B) motion rather than a petition for post-conviction relief. The State concedes that the trial court erred in this regard, and we agree.

■ Post-conviction procedures are not available to challenge a juvenile delinquency adjudication, which is civil in nature. *J.A. v. State,* 904 N.E.2d 250, 254 n. 1 (Ind.Ct.App.2009), *trans. denied.* Thus, "Trial Rule 60(B) is the appropriate means for challenging the effectiveness of counsel in a juvenile delinquency proceeding." *Id.* Here, therefore, the trial court erred by dismissing A.S.'s Petition because it was

---

1. It appears that no written order was ever entered.

not in the nature of a petition for post-conviction relief. That conclusion does not end our inquiry herein, however, inasmuch as we can affirm the decision of the juvenile court on any grounds apparent in the record. *Ratliff v. State*, 770 N.E.2d 807, 809 (Ind.2002). Thus, we turn next to A.S.'s argument that her petition should have been granted, reviewing the trial court's denial for an abuse of discretion. *S.E. v. State*, 744 N.E.2d 536, 538 (Ind.Ct. App.2001) (providing that we review the grant or denial of a trial Rule 60(B) motion for relief from judgment for an abuse of discretion).

## II. Right to Counsel

Indiana Trial Rule 60(B) provides that a court may offer a party relief from judgment if the party establishes, among other things, that the judgment is void. T.R. 60(B)(6). The right to counsel is guaranteed to children involved in juvenile proceedings by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, section 13 of the Indiana Constitution. *Application of Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *R.W. v. State*, 901 N.E.2d 539, 543–44 (Ind.Ct.App.2009); *see also D.H. v. State*, 688 N.E.2d 221, 223–24 (Ind.Ct.App.1997) (holding that "[a] juvenile is entitled to assistance of counsel at every stage of the juvenile proceedings, including the disposition hearing"). A judgment is void if it is based on the denial of a defendant's—or, here, a juvenile's—constitutional right to be represented by counsel. *See Harris v. State*, 861 N.E.2d 1182, 1186 (Ind.2007) (noting that "a conviction established by denial of the Sixth Amendment rights is void") (citing *Burgett v. Texas*, 389 U.S. 109, 114–15, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) (holding that conviction was void because defendant was not represented by counsel during trial

and record did not reveal a waiver of the right to representation)).

In the context of adult criminal proceedings, the right to counsel is essential to the fairness of those proceedings. *Drake v. State*, 895 N.E.2d 389, 392–93 (Ind.Ct.App.2008). Because a defendant gives up many benefits when the right to counsel is waived, the accused must knowingly and intelligently waive that right. *Id.* When a defendant asserts his right to self-representation, the trial court should advise the defendant of the dangers and disadvantages of self-representation. *Id.* Although there are no specific "talking points," our Supreme Court has adopted four factors to consider when determining whether a knowing and voluntary waiver occurred:

> "(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se."

*Poynter v. State*, 749 N.E.2d 1122, 1127–28 (Ind.2001) (quoting *United States v. Hoskins*, 243 F.3d 407, 410 (7th Cir.2001)).

In the context of juvenile adjudications, "the State bears a heightened burden in securing the juvenile's waiver of his or her right to counsel." *R.W.*, 901 N.E.2d at 543. Pursuant to Indiana Code section 31–32–5–1(2), a parent can waive a juvenile's right to an attorney only if:

> (A) [the parent] knowingly and voluntarily waives the right;
>
> (B) [the parent] has no interest adverse to the child;
>
> (C) meaningful consultation has occurred between [the parent] and the child; and

(D) the child knowingly and voluntarily joins with the waiver [.]

Our Supreme Court has held that "[t]he meaningful consultation requirement of the statute is a matter peculiar to juvenile waivers; it is a safeguard *additional* to those requirements common to adult waivers—that they be knowingly, voluntarily, and intelligently made." *Cherrone v. State,* 726 N.E.2d 251, 254 (Ind.2000) (emphasis in original) (quotations omitted). In other words, in a juvenile context, the threshold inquiry is whether the parent and juvenile both made knowing and voluntary waivers in accordance with constitutional jurisprudence; if it is found that they did so, the next inquiry is whether there was an opportunity for meaningful consultation.

> The meaningful consultation requirement will be met when the State demonstrates "actual consultation of a meaningful nature or ... the express opportunity for such consultation, which is then forsaken in the presence of the proper authority by the juvenile, so long as the juvenile knowingly and voluntarily waives his constitutional rights."

*Brown v. State,* 751 N.E.2d 664, 670 (Ind. 2001) (quoting *Williams v. State,* 433 N.E.2d 769, 772 (Ind.1982)). The " 'preferred practice is to provide consultation after advising the juvenile and his or her parents of the rights to be waived.' " *R.W.,* 901 N.E.2d at 544 (quoting *Borton v. State,* 759 N.E.2d 641, 646 (Ind.Ct.App. 2001)).

█ First, therefore, we must determine whether Mother and A.S. knowingly and voluntarily waived the right to counsel as guaranteed by the Indiana and United States Constitutions. As noted above, our Supreme Court has explained that there are four factors to analyze in determining whether a knowing and voluntary waiver occurred:

> "(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se."

*Poynter,* 749 N.E.2d at 1127–28 (quoting *Hoskins,* 243 F.3d at 410).

Here, the trial court made no inquiry whatsoever into the ostensible decision of A.S. and her Mother to proceed pro se. Although they signed the Advisement, which explained their rights, including the right to be represented by an attorney, nowhere in the record do they state affirmatively that they intended and wished to proceed without representation.[2] Similarly, there is no evidence in the record that A.S. and Mother understood the dangers and disadvantages of self-representation. In fact, the undisputed evidence in the record establishes that A.S. "did not know I would be representing myself or what the implications of that were." Appellant's App. p. 77. Furthermore, A.S. was not advised "that I had a valid self defense claim and an attorney could have investigated and presented that claim for me." *Id.* Likewise, there is no evidence in the record establishing the background and experience of either A.S. or Mother, and the conversation that Mother had with the trial court at the initial hearing suggests that she was confused about the procedures to be followed. Finally, there is

---

2.  The State represented to the trial court that "there is an executed Waiver of Rights form which outlines her right to counsel." Tr. p. 32–33. That is incorrect, however, inasmuch as the Advisement explicitly states that "[s]igning this form does not give up any of your rights." Appellant's App. p. 39.

little or no context to A.S. and Mother's ostensible decision to proceed pro se, inasmuch as there was no discussion whatsoever about the issue on the record.

The State argues that the trial court was "simply not required to advise A.S. of the perils of self-representation before accepting her admission [of delinquency]," appellee's br. p. 6, directing our attention to *Redington v. State* in support of its position. 678 N.E.2d 114, 118 (Ind.Ct.App. 1997). The State argues that *Redington* stands for the proposition that, in an adult criminal context, if the defendant intends to plead guilty, the trial court merely needs to advise the defendant of his right to counsel and that the court would appoint an attorney if the defendant could not afford to do so on his own. According to the State,

> [t]here is no material difference between *Redington* and the present case. That is, A.S. knew of her right to counsel and that the court would appoint her an attorney if she requested it. Any further warning regarding self-representation was unnecessary in the context of an admission.

Appellee's Br. p. 7.

We cannot agree that *Redington* controls the outcome herein. There is no evidence that at the time of the initial hearing, A.S. and Mother had already decided to admit to the allegations of delinquency. To the contrary, the evidence establishes that at that time, they intended to present witnesses and an argument that A.S. had acted in self-defense. A.S. and Mother were entitled to, among other things, an advisement from the trial court about the perils of proceeding pro se and the advantages of retaining counsel. Among other things, an attorney could have given them advice about the self-defense claim, a possible decision to admit to the allegations, and any plea bargain negotiations. Inasmuch as A.S. and Mother had not yet decided to admit to the allegations at the time of the initial hearing, *Redington* does not apply.

Additionally, we note, again, that in a juvenile context, there is a *heightened* burden that *Redington* does not take into consideration. I.C. § 31–32–5–1(2). Thus, we decline to hold that *Redington* applies at all in a juvenile context, inasmuch as there is no exception to the statutory requirements that parent and child make a knowing and voluntary waiver of the right to counsel and that there be an opportunity for meaningful consultation on the issue. *Id.* Here, therefore, the fact that A.S. ultimately decided to admit to the allegations does not absolve the trial court of its obligation to comply with Indiana Code section 31–32–5–1(2).

A.S. raises a nontrivial argument that *Redington* is no longer reflective of the law in Indiana. *See, e.g., Eaton v. State,* 894 N.E.2d 213, 216–17 (Ind.Ct.App.2008) (holding that even though defendant admitted to probation violations, the trial court's mere advisement of the right to representation was insufficient to establish a knowing and voluntary waiver of the right to counsel; instead, defendant must have been advised of the nature, importance, and extent of the right and the consequences of waiver), *trans. denied; Bumbalough v. State,* 873 N.E.2d 1099, 1102 (Ind.Ct.App.2007) (same). Inasmuch as we have found that *Redington* does not apply herein, we will save the question of the continuing viability of that opinion for another day.

Given this record, we simply cannot find any evidence establishing that Mother and A.S. knowingly and voluntarily waived the right to counsel. Similarly, there is no evidence that they were advised of that right and the dangers of proceeding pro se and had a subsequent opportunity for a

meaningful consultation on the issue. Indeed, nowhere in the record do they actually express a desire to proceed pro se. Under these circumstances, therefore, we find that A.S.'s adjudications are void and, consequently, she is entitled to relief from judgment.

The judgment of the trial court is reversed.

DARDEN, J., and CRONE, J., concur.

