*State*, 571 N.E.2d 568, 570 (Ind.Ct.App. 1991), *trans. denied.*

A.S., Appellant–Respondent,

v.

STATE of Indiana, Appellee–Petitioner.

No. 10A01–0908–JV–423.

Court of Appeals of Indiana.

June 30, 2010.

Bart M. Betteau, Betteau Law Office, LLC, New Albany, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

A.S. was taken into custody after she hit a fellow high school student. At her detention hearing, the court deprived A.S. of her rights to be represented by counsel, to present evidence, and to confront witnesses against her. Counsel thereafter was appointed for A.S., and a hearing on whether she was a delinquent occurred three months later.[1] The court found her

---

1. We are not certain how long A.S. remained in custody. An entry on the Chronological Case Summary for October 14, 2008, indicates A.S. could be released that day "provided juvenile may return to school." (App. at 2.) That the parties argue whether A.S.'s delinquency hearing occurred within sixty days, as required by Ind.Code § 31–37–11–2(b) for juveniles not in detention, rather than within the twenty days required for children in detention, suggests she was released from custody.

to be a delinquent and extended the probation she was serving for a prior adjudication.

A.S. appeals her detention because she was denied certain rights at her initial detention hearing, and argues she should not subsequently have been adjudicated a delinquent because her hearing did not take place within sixty days and she was not tried by a jury. We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY[2]

On October 6, 2008, A.S. was detained on suspicion of battery. She was in ninth grade and fourteen years old. At a detention hearing the next day, no witnesses were sworn and no evidence was heard. The court found probable cause A.S. was a delinquent and in need of further detention, but gave no reason for her continued detention. Before the hearing, A.S. and her mother were presented with, and they signed, a document the trial court appears to have treated as a waiver of a number of rights including A.S.'s right to counsel.

On October 10, 2008, the State filed a delinquency petition, and A.S. asked the court to set a hearing to review its detention order.[3] Counsel appeared for A.S. that day. A previously scheduled prehearing conference was held on October 14. Afterward the court noted in the docket that a "Pre-hearing Conference/Agreement of Admission Notice," (App. at 2), had been filed, and the court set an Admission Hearing for October 29.

The record does not reflect notice of the October 29 hearing was provided to A.S. or her counsel, and they did not appear. Later counsel moved to continue the hearing to November 5. The court reset the admission hearing as requested, but on November 3, A.S. moved to vacate the admission hearing and set a factfinding hearing. The court set a factfinding hearing for November 19.

After a number of continuances, the factfinding hearing was held January 7, 2009. On February 20, the court found A.S. a delinquent, and on May 19, it extended for six months the probation she was already serving for a prior adjudication.

## DISCUSSION AND DECISION

### 1. *A.S.'s Detention*

■ The State violated A.S.'s right to counsel at her detention hearing. In a companion case arising out of proceedings involving A.S. in the same court and before the same magistrate as in the case before us, we recently found A.S.'s alleged waiver of counsel was invalid:

Prior to the May 28, 2008, initial hearing, A.S. and her mother (Mother) were presented with a document entitled "Advisement of Rights for Juvenile Hearing" (Advisement), which reads, in pertinent part, as follows:

I understand that I have the following rights: to know the nature of the allegation(s) against the juvenile; to be represented by an attorney; to a speedy trial; to confront all witnesses; to subpoena witnesses; to introduce

---

2. We heard oral argument May 4, 2010 at the Southern Indiana Career and Technical Center in Evansville at the invitation of the Evansville Teen Court Program. We thank the Center and the Teen Court Program for their hospitality and commend counsel on the quality of their advocacy.

3. The motion was captioned "Motion to Continue Fact Finding Hearing," but it is apparent from the content of the motion it was for review of her detention.

evidence on my own behalf; to refrain from testifying against myself; and to have the State of Indiana prove that I committed the offense by a preponderance of the evidence if a petition to modify or to prove that I committed the offense beyond a reasonable doubt if a delinquency petition.

I understand that I may hire an attorney of my own choice, waive my right to an attorney, or ask the Court to appoint an attorney to represent me.

*A.S. v. State,* 923 N.E.2d 486, 488 (Ind.Ct. App.2010). Both A.S. and Mother signed that Advisement, which is the same form A.S. and Mother signed in the case before us. In both cases, the trial court confirmed at the initial hearing that A.S. and Mother had signed the Advisement, but did not ask A.S. if she wanted legal representation, inquire as to whether she desired appointed counsel, or advise her as to the burdens of proceeding *pro se.* In both cases, the trial court stated in the initial hearing entry in the Chronological Case Summary (CCS): "Witnesses sworn, testimony heard," (App. at 2), 923 N.E.2d at 488, but in fact no witnesses were sworn and no testimony was heard at either hearing.

In *A.S.,* an out-of-court pre-hearing conference was conducted with the deputy prosecutor, A.S., and Mother. At some point, all three signed an "Agreement of Admission" that called for A.S. to admit all of the allegations, be placed on probation, and receive a suspended sentence. At a subsequent hearing, during which the trial court did not confirm A.S. had knowingly waived her right to counsel, A.S. admitted all the allegations. The trial court then found A.S. to be delinquent and ordered her to comply with the terms of the Agreement. 923 N.E.2d at 488.

A.S. moved for relief from judgment, alleging her right to counsel and due pro-

cess had been violated because she was adjudicated a delinquent without counsel and without waiving her right to counsel. Her motion was denied, and on appeal we reversed because:

> The right to counsel is guaranteed to children involved in juvenile proceedings by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, section 13 of the Indiana Constitution. A judgment is void if it is based on the denial of a defendant's—or, here, a juvenile's—constitutional right to be represented by counsel.

In the context of adult criminal proceedings, the right to counsel is essential to the fairness of those proceedings. Because a defendant gives up many benefits when the right to counsel is waived, the accused must knowingly and intelligently waive that right. When a defendant asserts his right to self-representation, the trial court should advise the defendant of the dangers and disadvantages of self-representation. Although there are no specific "talking points," our Supreme Court has adopted four factors to consider when determining whether a knowing and voluntary waiver occurred:

> (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se.

In the context of juvenile adjudications, "the State bears a heightened burden in securing the juvenile's waiver of his or her right to counsel." Pursuant to Indiana Code section 31–32–5–1(2), a parent can waive a juvenile's right to an attorney only if:

(A) [the parent] knowingly and voluntarily waives the right;

(B) [the parent] has no interest adverse to the child;

(C) meaningful consultation has occurred between [the parent] and the child; and

(D) the child knowingly and voluntarily joins with the waiver[.]

Our Supreme Court has held that "[t]he meaningful consultation requirement of the statute is a matter peculiar to juvenile waivers; it is a safeguard *additional* to those requirements common to adult waivers—that they be knowingly, voluntarily, and intelligently made." In other words, in a juvenile context, the threshold inquiry is whether the parent and juvenile both made knowing and voluntary waivers in accordance with constitutional jurisprudence; if it is found that they did so, the next inquiry is whether there was an opportunity for meaningful consultation.

*Id.* at 490–91 (citations omitted) (emphasis in original).

In that situation virtually identical to the case before us, we determined A.S. and Mother did not knowingly and voluntarily waive the right to counsel guaranteed by the Indiana and United States Constitutions. *Id.* at 491. The trial court made no inquiry into the ostensible decision of A.S. and Mother to proceed *pro se*. The advisement they signed explained A.S.'s rights, including the right to be represented by an attorney, but nowhere in the record did they state affirmatively that they intended and wished to proceed without representation. There was no evidence in the record that A.S. and Mother understood the dangers and disadvantages

of self-representation. A.S. was not advised that an attorney could investigate and present her self-defense claim. There was no evidence in the record establishing the background and experience of either A.S. or Mother, and the conversation Mother had with the trial court at the initial hearing suggested she was confused about the procedures to be followed. *Id.*

On that record, we could not find "any evidence establishing that Mother and A.S. knowingly and voluntarily waived the right to counsel. Similarly, there is no evidence that they were advised of that right and the dangers of proceeding *pro se* and had a subsequent opportunity for a meaningful consultation on the issue." *Id.* at 492–93. We accordingly found A.S.'s adjudications were void and she was entitled to relief from judgment.

As A.S. was subjected to exactly the same procedures and constitutional violation in the case before us, we conclude A.S.'s purported waiver of her right to counsel did not comport with constitutional requirements. *See Id.*

The State does not dispute that A.S. was subjected to the constitutional violation she alleges, but urges us not to address the merits of the violation because: 1) she waived the claim by not raising it below; and 2) the claim is moot because she is no longer being detained.

### A. *Fundamental Error*

 A.S.'s claim is not waived, as the constitutional violation was fundamental error.[4] Generally, a claim of error must be raised during trial in order to be available as an issue on appeal. *Clark v. State*, 915 N.E.2d 126, 131 (Ind.2009), *reh'g denied.* But we sometimes entertain such unraised claims under the rubric of "fun-

4. As *A.S.* was an appeal from the denial of a motion for relief from judgment, we did not

address waiver or fundamental error.

damental error." *Id.* Fundamental error is an error that makes a fair trial impossible or amounts to a blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. *Id.*

■ We agree with A.S. that failing to adequately inform a delinquent of her right to counsel is fundamental error. In *In re Jennings,* 176 Ind.App. 277, 280, 375 N.E.2d 258, 261 (1978), the juvenile court told Jennings of his right to be represented by counsel, but did not tell him an attorney would be appointed for him if he could not afford one. Jennings was not represented by counsel at his probation revocation hearing primarily because he could not pay his lawyer's fee. The failure to inform Jennings of his right to appointed counsel was a denial of due process of law:

> Such a denial of due process and fair treatment constitutes fundamental error which can be raised for the first time on appeal. Therefore, even though Jennings did not allege that he was denied due process in his motion to correct errors, such allegation of error can properly be considered by this court in that we have determined that the error was fundamental error. Therefore, the order of the trial court revoking probation must be reversed and a new hearing must be held wherein Jennings is previously informed of his right to be represented by counsel of his choice or, if he cannot afford counsel, he must be informed of his right to have counsel appointed for him.

*Id.*

■ Moreover, we note that application of the fundamental error doctrine is partic-

ularly appropriate when the error asserted is deprivation of the constitutional right to counsel:

> While concerns over due process do sometimes merit invocation of a fundamental error exception to the contemporaneous objection rule on direct appeal, we think its availability as an exception to the waiver rule in post-conviction proceedings is generally limited to those circumstances we set forth in *Bailey v. State,* 472 N.E.2d 1260, 1263 (Ind.1985): *"Deprivation of the Sixth Amendment right to effective assistance of counsel,* or ... an issue demonstrably unavailable to the petitioner at the time of his [or her] trial and direct appeal."

*Lindsey v. State,* 888 N.E.2d 319, 324 (Ind. Ct.App.2008), *trans. denied* (emphasis supplied). A.S.'s constitutional claim was not waived.[5]

## B. *Mootness*

■ The State next argues we should not consider the violation of A.S.'s constitutional right because she is no longer being detained. We acknowledge we cannot provide relief to A.S. in this case, but we choose to address her claim because it reflects a question of great public importance and involves issues likely to recur.

■ A case is moot and will be dismissed when no effective relief can be rendered to the parties before the court. *W.R.S. v. State,* 759 N.E.2d 1121, 1122–23 (Ind.Ct.App.2001). The State notes A.S. had been released from detention before the factfinding hearing, she was not detained after the adjudication of delinquency, and it appears the period of probation imposed after this delinquency adjudication has expired. "Therefore, there is

---

**5.** As explained below, A.S. was also deprived of her rights to present evidence and confront witnesses against her.

nothing this Court can do to remedy any of the alleged deficiencies in the detention hearing, and the issues are moot." (Br. of Appellee at 7.)

■ However, we may review issues under a public interest exception to the mootness doctrine when the case involves questions of great public importance. *W.R.S.*, 759 N.E.2d at 1123. The public interest exception usually is recognized in cases that involve issues likely to recur. *Id.* Issues involving the propriety of juvenile commitment are likely to recur, but relief often cannot be rendered to the parties because the short-term commitment of a juvenile at a correctional facility will frequently be concluded by the time an appeal is heard. *Id.* In *W.R.S.*, we determined the issues likely would arise again but evade appellate review,[6] so we chose to address them. *Id.* We address A.S.'s claim herein for the same reasons.

The State argues this case is not subject to the public interest exception because it does not involve a "mistaken interpretation of statute or law that could inure to the detriment of other juveniles before the juvenile court below" and does not "appear to involve an abuse of the inherent power of the juvenile court" or other "systemic abuse." (Br. of Appellee at 8.) Rather, the State asserts, this case merely ad-

dressed the "quality of the waiver" of the rights that A.S. now asserts she was denied. (*Id.*)

In light of the record before us and our earlier *A.S.* decision, we decline to adopt the State's characterization of the trial court's violations of A.S.'s rights as those that would not "inure to the detriment of other juveniles before the juvenile court below." (*Id.*) In the prior proceeding in the same court and before the same magistrate, A.S. was deprived of her right to counsel in essentially the same manner as she was in the case before us. Furthermore, in the case before us, the State did not follow the law governing a juvenile's rights to confront and cross-examine witnesses and to present evidence.[7] The record suggests the court before which A.S. appeared routinely uses a standard form that it treats as the juvenile's waiver of certain constitutional rights. The prosecutor said: "We always have the juveniles execute waivers at their initial hearings which advises them of their rights." (Tr. at 37–38.) Thus it appears waivers might frequently be improperly obtained from other juveniles who appear in the same court.

We rejected a similar mootness argument in *N.J.R. v. State*, 439 N.E.2d 725, 726 (Ind.Ct.App.1982). There we deter-

---

6. W.R.S. argued the juvenile court could not detain him in a secure facility pending his fact-finding hearing because he was alleged to have committed only a "status offense," and the juvenile court could not commit him to the Department of Correction after finding him a repeat truant because the court did not follow the proper procedure. 759 N.E.2d at 1124–25.

7. As noted above, the trial court's entry in the Chronological Case Summary (CCS) for the detention hearing said "Witnesses sworn, testimony heard," (App. at 2), but the transcript reveals no witnesses were sworn and no testimony was heard. This, A.S. asserts, violated her rights to confront and cross-examine wit-

nesses, to subpoena witnesses, and present evidence. The State does not argue otherwise, and we agree A.S. was deprived of those rights.

Those rights are provided by Ind.Code § 31–32–2–1, which states: "Except when a child may be excluded from a hearing under IC 31–32–6, a child is entitled to: (1) cross-examine witnesses; (2) obtain witnesses or tangible evidence by compulsory process; and (3) introduce evidence on the child's own behalf." We have recognized these statutory protections apply to initial hearings in juvenile court. *See N.M. v. State*, 791 N.E.2d 802, 805 (Ind.Ct.App.2003).

mined the juvenile court erred in detaining N.J.R. in a secure facility following her initial hearing. The State argued N.J.R.'s appeal was moot because her "sentence" had been served. *Id.* After noting N.J.R.'s detention was not a "sentence," we found:

> [T]his case presents a compelling need for resolution because otherwise the issue would be capable of repetition and yet evade review. Detention is, of course, by its nature temporary because it is predispositional. Therefore, in each case, a claimed detention in violation of law will always be moot in the normal course of appellate review because the disposition determinates [sic] detention. However, to permit juveniles' detention under unlawful procedures is repugnant to any concept of justice.

*Id.*

Because the fundamental error and public interest exceptions apply, we conclude it is appropriate to address the merits of A.S.'s arguments regarding the court's denial of her rights at the initial detention hearing. As in *N.J.R.*, A.S.'s detention was "under unlawful procedures," *see id.,* because the court did not obtain a constitutionally sufficient waiver of counsel from A.S. and did not allow A.S. to present evidence or confront witnesses. Therefore, her initial detention was improper.

### 2. *A.S.'s Adjudication as a Delinquent*

A.S. argues her final adjudication as a delinquent was error because her fact-finding hearing did not occur in the time required by statute and she had a right to a jury trial. We find the hearing was timely and A.S. had no right to a jury trial, so we affirm the final adjudication.

### A. *The "Sixty–Day" Rule*

■ If a delinquency petition has been filed but the child is not in detention,[8] "the hearing must be commenced not later than sixty (60) days, excluding Saturdays, Sundays, and legal holidays, after the petition is filed." Ind.Code § 31–37–11–2(b). This petition regarding A.S. was filed October 10, 2008, but the hearing was not held until January 7, 2009. A.S. contends this was thirty days late because ninety days passed between those two dates. The State asserts the hearing was timely because weekends and holidays do not count toward the deadline.

■ The resolution of this issue turns on the interpretation of the phrase "excluding Saturdays, Sundays, and legal holidays" in the controlling statute, Ind.Code § 31–37–11–2(b). We hold that every Saturday, Sunday, and holiday during that period should be excluded from the calculation.

In *Partlow v. State,* 453 N.E.2d 259, 266 (Ind.1983), *cert. denied* 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219 (1984), Partlow claimed the court lost jurisdiction because the delinquency petition was not filed within seven days after his arrest and the waiver hearing was not held within twenty days [9] after the delinquency petition was filed. The Court addressed statutory lan-

---

8. A.S. was detained during part of this proceeding, but neither she nor the State argues the statutory provision for juveniles in detention applies. *See* Ind.Code § 31–37–11–2(a) (providing juvenile in detention must have final hearing within twenty days of delinquency petition filing). Thus we determine whether her hearing occurred within the sixty days required by Ind.Code § 31–37–11–2(b) for juveniles not in detention.

9. A twenty-day, rather than sixty-day period applied in *Partlow* because Partlow was in detention. At that time, the statute also provided a sixty-day period for juveniles not in detention. 453 N.E.2d at 266 (citing Ind. Code § 31–6–7–6(b), which was repealed by P.L. 1–1997).

guage substantially the same as that in the statute on which A.S. relies:

> If the child is in detention and a petition has been filed, either a fact-finding hearing or a waiver hearing must be commenced within twenty [20] days (excluding Saturdays, Sundays, and legal holidays) after the petition is filed. If the child is not in detention, the hearing must be commenced within sixty [60] days (*excluding Saturdays, Sundays, and legal holidays*) after the petition is filed.

*Id.* at 266 (citing Ind.Code § 31–6–7–6(a)) (emphasis supplied in *Partlow*). As for whether the hearing occurred in time, the Court explained:

> The delinquency petition was filed on December 3, 1980, and the waiver hearing was held on January 6, 1980. The Christmas holiday was December 25 and 26, 1980, and the New Year holiday was January 1 and 2, 1981. *Excluding those holidays and the weekends*, the waiver hearing was held on the twentieth day after the delinquency petition was filed.

*Id.* at 266 (emphasis supplied).

As the State notes, there were thirteen Saturdays, thirteen Sundays, and six legal holidays between the filing of A.S.'s delinquency petition and the hearing. Thus, of the ninety calendar days that passed in the interim, only fifty-eight counted toward the sixty-day deadline. A.S.'s hearing was held within sixty days and was timely.

**B.** *Right to Jury Trial*

Ind.Code § 31–32–6–7 provides all matters in juvenile court are to be tried to the court except for "[a] trial of an adult charged with a crime." Thus A.S. does not have a statutory right to a trial by jury for her delinquency adjudication. A.S. alleges she had a constitutional right to trial by jury.

Art. 1, § 20 of the Indiana Constitution provides, "In all civil cases, the right of trial by jury shall remain inviolate." That constitutional right to trial by jury in all civil cases has been construed to apply only to actions triable by jury at common law. *Gray v. Monroe County Dept. of Pub. Welfare*, 529 N.E.2d 860, 861 (Ind.Ct.App.1988). When a cause of action did not exist in 1852, "the crucial inquiry is whether the cause of action at issue is equitable or legal in nature as those terms were used in 1852." *Cunningham v. State*, 835 N.E.2d 1075, 1077 (Ind.Ct.App.2005), *trans. denied, see also* Ind. Trial Rule 38(A).[10] "If an action is essentially legal in nature, a jury demand must be honored." *Id.* (quoting *Midwest Sec. Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 169 (Ind.2000) (Boehm, J., concurring)).

Our Indiana Supreme Court has held a juvenile has no constitutional right to a trial by jury at a delinquency hearing:

> We believe that to institute the jury trial as a part of the juvenile court system would so formalize the procedures conducted therein as to destroy the very

---

**10.** Indiana Trial Rule 38(A) provides:

Issues of law and issues of fact in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive

equitable jurisdiction with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct.

innovation brought about by our Juvenile Act. Should the jury system be imposed, the role of the juvenile judge would be reduced to that now exercised by his counterpart on the criminal court. . . . [T]he juvenile court judge is supposed to be more than just a trier of fact.

> He must seek to instill in the child a sense of value, impart a feeling of security and belonging, communicate the importance and dignity of being a member of society and, hopefully, in this manner, prevent the child from pursuing a criminal and antisocial career. A juvenile court judge must, in a unique manner, establish a relationship that will permanently alter the behavior patterns of the child. He must have patience, understanding, and a genuine interest in the welfare of the child and must direct all of his efforts toward rehabilitation.

*Bible v. State*, 253 Ind. 373, 389, 254 N.E.2d 319, 327 (1970) (quoting *Commonwealth v. Johnson*, 211 Pa.Super. 62, 234 A.2d 9, 16 (1967)).

A.S. urges us to review the *Bible* holding in light of *Cunningham*, where we held there is a constitutional right to a jury trial in a prosecution for speeding.[11] We noted that, until 1981, an infraction was considered a criminal action and was not governed by what were then titled the Indiana Rules of Civil Procedure. Before the enactment of Ind.Code §§ 34–4–32–1 to –5, trial courts were required to inform defendants in traffic cases of their criminal rights, including the right to a jury trial. "[U]ntil 1981, when the Indiana Rules of Civil Procedure and, now, the Indiana

Rules of Trial Procedure began to govern the enforcement of infraction violations, such offenses were criminal actions and, as such, were not equitable in nature." *Id.* at 1078. Traffic infractions are now governed by the Indiana Rules of Trial Procedure, but they

> remain quasi-criminal in nature—they are enforced by the police; complaints are initiated and litigated by a prosecuting attorney on behalf of the State; and violators are fined by the government. Because of this, it logically follows that, just as criminal actions were outside the scope of equitable actions as provided by our case history, so, too, would quasi-criminal actions have been historically non equitable. Instead, in 1852, actions criminal in nature would necessarily have been legal. In such actions, a jury trial demand must be honored. We therefore hold that the trial court improperly denied Cunningham's request for a jury in violation of Article I, Section 20 of the Indiana Constitution.

835 N.E.2d at 1079 (footnotes and citation omitted).

By that standard, A.S. argues, the right to jury trial should apply in juvenile proceedings because they too are quasi-criminal. In support thereof she notes the police arrested her, the prosecutor brought the action against her, and she faced sanctions akin to criminal penalties.

We decline to disregard our Supreme Court's explicit holding in *Bible*, nor do we agree the *Cunningham* reasoning should be applied to juvenile proceedings, as such proceedings would have been considered

---

**11.** The State says we "appli[ed] a new method of analysis to such questions" in *Cunningham*. (Br. of Appellee at 9.) We did not. We relied on the long-standing principle that the right to jury trial is determined by whether the cause of action is essentially legal or equitable, as those terms were used in 1852. "This formulation can be found in several Indiana decisions, both recent and ancient." *Midwest Sec. Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 169 (Ind.2000) (Boehm, J., concurring).

892

equitable in 1852. In *State ex rel. Johnson v. White Circuit Court*, 225 Ind. 602, 608, 77 N.E.2d 298, 301 (1948), our Indiana Supreme Court noted that under the ancient common law, the king, as *parens patriae*, was deemed to have charge of persons who, because of youth and inexperience, could not care for themselves or protect their estates. The king named a chancellor, who was the guardian of all infants. *Id.* The power the State has conferred on our current juvenile courts "is of the same character as the jurisdiction exercised by courts of chancery over the person and property of infants, and flows from the general power and duty of the state *parens patriae* to protect those who have no other lawful protector." *Id.* Thus, "in view of the equitable nature of the proceedings, the juvenile delinquent was not entitled to a trial by jury." *Id.* A.S. did not have a right to trial by jury.

## CONCLUSION

While A.S. should not have been subjected to detention without counsel or a valid waiver of counsel, we may not reverse her ultimate adjudication as a delinquent; she was represented by counsel at the time of her final hearing, her hearing was held within sixty days as required by statute, and she was not entitled to a jury trial. We accordingly affirm in part and reverse in part.

Affirmed in part and reversed in part.

BAILEY, J., and BROWN, J., concur.